## WYMAN, Treasurer, *v.* HALSTEAD, Administrator.

IN ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued December 13th, 14th, 1883.—Decided January 7th, 1884.

*Administration—Claims against the United States—Conflict of Jurisdiction— District of Columbia—Mandamus—Treasurer of the United States.*

For the purpose of founding administration, a simple contract debt is assets where the debtor resides, even if a bill of exchange or promissory note has been given for it, and without regard to the place where the bill or note is found or payable.

Debts due from the United States are not local assets at the seat of government only.

The treasurer of the United States cannot be compelled by writ of mandamus to pay to an administrator, appointed in the District of Columbia, of an inhabitant of one of the States of the Union, the amount of a draft payable to the intestate at the treasury out of an appropriation made by Congress, and held by such administrator.

*Mr. Assistant Attorney-General Maury* for the United States.
*Mr. A. L. Merriman* and *Mr. J. W. Cooksey* for defendant in error.

Mr. Justice GRAY delivered the opinion of the court.

This is a writ of error sued out by the Treasurer of the United

States, to reverse a judgment of the Supreme Court of the District of Columbia, ordering a peremptory writ of mandamus to issue against him upon the petition of Eminel P. Halstead, as administrator, appointed in the District, of the estates of John N. Pulliam and John J. Pulliam (each of whom was an inhabitant of the State of Tennessee at the time of his death), and as trustee appointed by that court, to compel the payment to him of the amount of certain drafts hereinafter mentioned.

The petition alleged, and the answer admitted, these facts: On June 17th, 1882, Wyman, then and still Treasurer of the United States, residing and transacting the business of his office at Washington in the District of Columbia, issued, under and by virtue of the act of Congress of May 1st, 1882, c. 114, making appropriations therefor, three drafts payable at the treasury in Washington, one for $3,020, payable to John J. Pulliam, executor of John N. Pulliam, or order, and two for $1,223 and $545 respectively, payable to John J. Pulliam or order; and the three drafts were delivered to Halstead on account of the payees. John J. Pulliam afterward died, and Halstead, having the drafts in his possession, applied for, and on August 2d, 1882, obtained, letters of administration in the District of Columbia upon the several estates of the two Pulliams. In September, 1882, Benjamin U. Keyser filed a bill on the equity side of the Supreme Court of the District against Halstead and others, claiming an equitable interest in these drafts or the proceeds thereof; and in March, 1883, obtained a decree directing Halstead, as administrator as aforesaid, and as trustee for that purpose, to indorse and collect the drafts, and to make distribution of the proceeds. In obedience to this decree, Halstead, on April 19th, 1883, indorsed the drafts, and demanded payment thereof of Wyman, as treasurer of the United States; but he, although having sufficient money in his possession, appropriated by Congress, refused to pay them without the indorsements of administrators appointed in the State of Tennessee, the domicil of the two deceased persons.

The opinions delivered in the court below, upon granting the writ of mandamus, are reported in 11 Washington Law Reporter, 370–377, 385–394.

The determination of this case does not depend upon the question whether administration was rightly taken out in the District of Col im'ia, nor upon the question whether an administrator appointed elsewhere could sue within the District upon debts payable here, but upon the quest¹on whether a payment by the United States to an administrator already or hereafter appointed in Tennessee, the domicil of the deceased, would be a good discharge of the debts, payment of which is now sought to be enforced.

The general rule of law is well settled, that for the purpose of founding administration all simple contract debts are assets at the domicil of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable. *Yeomans* v. *Bradshaw*, Carth. 373; *S. C.* Comb. 392; Holt, 42; 3 Salk. 70, 164; Abinger, C. B., in *Attorney General* v. *Bouwens*, 4 M. & W. 171, 191; *S. C.* 1 Horn & Hurlstone, 319, 324; Parke, B., in *Mondel* v. *Steele*, 1 Dowl. (N. S.) 155, 157; *Slocum* v. *Sanford*, 2 Conn. 533; *Chapman* v. *Fish*, 6 Hill, 554; *Owen* v. *Miller*, 10 Ohio St. 136; *Pinney* v. *McGregory*, 102 Mass. 186.

An administrator is of course obliged to demand payment at the place where the bill or note is payable; and he may find difficulty, unless it is payable to bearer, in suing upon it in a place in which he has not taken out administration. But payment to the administrator appointed in the State in which the intestate had his domicil at the time of his death, whether made within or without that State, is good against any administrator appointed elsewhere. *Wilkins* v. *Ellett*, 9 Wall. 740, and 108 U. S.

As was said by Mr. Justice Story, in delivering the judgment of this court in *Vaughan* v. *Northup*, 15 Pet. 1, 6, and repeated by Mr. Justice McLean, in delivering judgment in *Mackey* v. *Coxe*, 18 How. 100, 105:

"The debts due from the government of the United States have no locality at the seat of government. The United States, in their sovereign capacity, have no particular place of domicil, but possess, in contemplation of law, an ubiquity throughout the Union; and the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicil. On the contrary, the administrator of a creditor of the government, duly appointed in the State where he was domiciled at the time of his death, has full authority to receive payment and give a full discharge of the debt due to his intestate, in any place where the government may choose to pay it."

In *Vaughan* v. *Northup*, an administrator, appointed in Kentucky, of an inhabitant of that State who died there intestate and childless, received a sum of money from the treasury of the United States, for military services rendered by the intestate during the Revolutionary War; and a bill in equity, filed against him in the District of Columbia by the next of kin, for their distributive shares of the money, was dismissed for want of jurisdiction, because an administrator, appointed in and deriving his authority from one State, was not liable to be sued elsewhere, in his official character, for assets lawfully received by him under and in virtue of his original letters of administration.

In that case, as in this, it was argued by counsel that the assets in question were not collected in the State of the intestate's domicil, "but were received as a debt due from the government at the Treasury Department at Washington, and so constituted local assets within this District." It was in declining to yield to that argument, that the court laid down the general principles above quoted, and added:

"If any other doctrine were to be recognized, the consequence would be, that before the personal representative of any deceased creditor, belonging to any State in the Union, would be entitled to receive payment of any debt due by the government, he would be compellable to take out letters of administration in this District for the due administration of such assets. Such a doctrine has never yet been sanctioned by any practice of the government,

and would be full of public as well as private inconvenience. It has not, in our judgment, any just foundation in the principles of law. We think that Northup, under the letters of administration taken out in Kentucky, was fully authorized to receive the debt from the government to his intestate ; that the moneys so received constituted assets under that administration, for which he was accountable to the proper tribunals in Kentucky ; and that distribution thereof might have been, and should have been, sought there in the same manner as of any other debts due to the intestate in Kentucky."

The act of June 24th, 1812, c. 106, § 11 (since omitted in the Revision in 1874 of the Statutes of the District), by which executors or administrators appointed in any State or Territory were permitted to maintain any suit or action, or to prosecute and recover any claim, in the District of Columbia, as if they had been appointed here, was referred to in the opinion, not as the principal ground of decision, but as affording no support for the bill, and as fortifying rather than weakening the general principles of law upon the subject. 2 Stat. 758 ; 15 Pet. 7, 8.

In the case at bar, neither the fact that the drafts were made payable at the treasury of the United States in the city of Washington, nor the deposit, pursuant to § 307 of the Revised Statutes, of the money represented by the drafts in the treasury to the credit of the payees, affected the character or the locality of the debts. The deposit of the money gave the payees or their representatives no property in or lien upon it. The obligation of the United States was not to surrender to them any specific sums of money, but to pay to them sums equal to the amount credited to them, as in the case of any other liquidated debt. The creditors could not indeed insist upon payment without first demanding it at the treasury. But the United States, in their sovereign capacity, having no domicil in any one part of the Union rather than in any other, do not, by establishing at the national capital a treasury for the transaction of the principal business of the financial department of the government, and making their money obligations payable there, confine their presence or their powers to this spot. The

United States having, in the phrase of Mr. Justice Story, " an ubiquity throughout the Union," may in their discretion, exercised through the appropriate officers, pay a debt, due to the estate of a deceased person, either to the administrator appointed in the State of his domicil, or to an ancillary administrator duly appointed in the District of Columbia; and the exercise of their discretion in this regard cannot be controlled by writ of mandamus.

It is hardly necessary to mention the proceedings in equity upon the suit of Keyser. Though referred to in the petition for the writ of mandamus in the general terms stated at the beginning of this opinion, they have not been printed in full in the record, as required by the eighth rule. The reason doubtless is, that both in the opinion of the court below and in the argument in this court, while it is said that the administrator appointed in Tennessee of the estate of John N. Pulliam was made a defendant in that suit, and the bill taken for confessed against him, it is admitted that he was not amenable as administrator to suit in this District, and that neither he, nor any administrator hereafter appointed in Tennessee of the estate of John J. Pulliam, could be concluded by that decree.

The result is, that the judgment of the Supreme Court of the District of Columbia awarding a peremptory writ of mandamus must be reversed, and the case remanded to that court, with directions to

*Dismiss the petition.*