WILMINGTON TRUST COMPANY, Administrator of FREDERICO EVARISTO SCHEMEL, deceased, *vs.* ISABEL M. R. DE PARIS.

EXECUTORS AND ADMINISTRATORS—ANCILLARY ADMINISTRATOR—FOREIGN ATTACHMENT.

An ancillary administrator appointed in this state can, under a writ of foreign attachment founded on a simple contract debt, attach property of a non-resident debtor in the state.

(*December* 9, 1915.)

Judges RICE and HEISEL sitting.

*John F. Neary* (of *Ward, Gray and Neary*) for plaintiff.

*Hugh M. Morris* (of *Saulsbury, Morris and Rodney*) for defendant.

Superior Court, New Castle County, November Term, 1915.

FOREIGN ATTACHMENT, No. 5, March Term, 1914.

Action by the Wilmington Trust Company, administrator, by ancillary letters, of Frederico Evaristo Schemel, late of Venezuela, deceased, against Isabel M. R. De Paris, also of Venezuela. Certain property of the defendant in this state was seized. The defendant gave bond, dissolving the attachment, and entered appearance by counsel. Plaintiff filed its declaration upon certain simple contracts, or evidences of indebtedness. A

general demurrer was entered. The causes of demurrer and the questions determined appear in the opinion of the court. Demurrer overruled.

HEISEL, J., delivering the opinion of the court:

It appears from the declaration that plaintiff's intestate, Frederico Evaristo Schemel, at the time of his death, was a citizen of Venezuela, and also that at the time of the filing of this action, the defendant, De Paris, was a citizen of Venezuela.

It further appears that the causes of action alleged in the declaration, are certain simple contract debts, some of which are evidenced by promissory notes endorsed by the defendant to plaintiff's intestate.

It also appears that domiciliary letters of administration were granted in Venezuela on Schemel's estate, and ancillary letters granted to the plaintiff in this state.

Under the writ issued in this case, certain property of the defendant in this state was seized, whereupon defendant gave bond and appeared by counsel, who filed a general demurrer to plaintiff's declaration, and states his causes of demurrer to be (a) that the debts sued for are not assets within this state; (b) are not subject to administration granted within this state; and (c) that the plaintiff is not administrator of the alleged debts— and relies upon two propositions of law to support his contentions: First, that letters of administration have no extra territorial force and confer no authority upon the representative to administer upon property outside of the state wherein the letters are granted; and, second, that simple contract debts are, for the purpose of administration, assets where the debtor resides, and, as bills of exchange and promissory notes are merely evidence of indebtedness or of title, the debts due on these instruments are assets where the debtor lives, and not where the instruments are found.

Counsel for plaintiff admits the soundness of defendant's first proposition of law, and as a general statement of the law, admits defendant's second proposition; contending, however, that they are either not applicable, or not decisive, of the question raised in this case.

As we see it, the only question for our determination is, can an ancillary administrator appointed in this state, attach, under a writ of foreign attachment founded upon a simple contract debt, property of a nonresident debtor within this state? We think he can.

The cases in Maine, New Hampshire, and Vermont, cited by counsel for defendant hold that an administrator has no authority outside the state appointing him to administer the assets of his estate, either directly, by bringing suit, exercising rights of ownership, etc., or indirectly, by assigning assets in a foreign state to a citizen of that state, in order that such citizen may bring action against the debtor in his own name in the foreign state, thus doing indirectly what an administrator could not do directly. The reason for thus holding, as stated generally in those cases, is that no state can confer authority upon an administrator that can be enforced outside the state appointing him, excepting only so far as provided by the laws of the foreign state; and no state will so far extend its comity as to recognize the authority of a foreign representative where such recognition will conflict with the rights of local creditors or local administration.

In the Kentucky case, the question raised was the extent of the liability of the surety on an administration bond given in the state of Kentucky; the court holding that assets in the State of Ohio, not having come into the possession of the administrator in the State of Kentucky, the surety on the Kentucky bond was not liable for the misappropriation of such Ohio assets, as did, improperly, come into the possession of the Kentucky administrator in the State of Ohio.

The Missouri case, reported in *Union Mut. Life Ins. Co. v. Lewis*, 97 *U. S.* 682, 24 *L. Ed.* 1114, we think not in point, being decided under the statutes of that state relating to public administration.

The case of *Wyman v. Halstead*, 109 *U. S.* 654, 3 *Sup. Ct.* 417, 27 *L. Ed.* 1068, decides "that *for the purpose of founding administration* all simple contract debts are assets at the domicile of the debtor," and that such debts are evidenced by promissory notes makes no difference in that respect.

No case cited by counsel for defendant denies the right of recovery to an administrator, when he finds property of the debtor within his territorial jurisdiction, when the debt is a simple contract debt, and the debtor a nonresident, while cases cited by counsel for plaintiff maintain such right of recovery.

We think the Rhode Island court has laid down the correct rule. In *Amsden v. Danielson*, 18 *R. I.* 789, 31 *Atl.* 4, the court said: ·

"Passing over the question whether the promise of the defendant made a new cause of action, about which there seems to be little room for doubt, we come, second, to the main question which has been argued, viz., whether the executor in Rhode Island can sue at all for the amount due upon the note. The argument is that the note was payable in Killingly, the domicile of the defendant, and hence its proceeds were assets in Connecticut and not in Rhode Island. This argument is sustained by *Pinney v. McGregory*, 102 *Mass.* 186, *Abbott v. Coburn*, 28 *Vt.* 663 [67 *Am. Dec.* 735], and *Wyman v. Halsted*, 109 *U. S.* 654 [3 *Sup. Ct.* 417, 27 *L. Ed.* 1068]. Admitting that the note was payable in Killingly, that fact does not control this case. If it were necessary to bring suit upon it in Connecticut, of course an administrator would be appointed there. But it does not follow that it cannot be collected elsewhere. The plaintiff having the note, and finding property of the defendant in this state, had as much right to proceed to collect it here, as though it had been his own debt. It would be a most absurd rule of law which would require him to go to another state, record the will, secure the appointment of an administrator and go through all the requirements of a probate court, in order to bring a suit where possibly there might be no property, when he could attach property here and secure his judgment without trouble."

Again, at *page* 790 of 18 *R. I.*, at *page* 5 of 31 *Atl.*, the court said, in substance:

Assuming that the debt was assets in the state where the debtor resided, "the question is whether the administrator may collect the debt in another state if he has the chance to do so. Upon this question we have no doubt."

In the same case, reported at *page* 535 of 19 *R. I.*, at *page* 70 of 35 *Atl.*, where the same question was before the same court at a later stage in that case, the court said:

"The burden of the argument for the defense is that the debt was an asset in Connecticut. We have not said that it was not. But suppose it was. The cases are practically unanimous that an executor may collect it elsewhere than in the debtor's domicile, if he can, and the counsel for the defendant cites no case to the contrary."

That the plaintiff in the Rhode Island case was a domiciliary administrator, while the plaintiff in the case at bar is an ancil-

lary administrator can make no difference, in so far as their right to bring actions to recover assets of the estate within the jurisdiction of their appointment is concerned.

It seems to us, to lay down a doctrine sustaining the demurrer in this case would make it impossible in many instances to compel the payment of debts due decedents' estates.

If the plaintiff in this case cannot recover because the debt owed by defendant to plaintiff may not be an asset to be administered in this state, and therefore plaintiff cannot maintain this action, in what manner, or kind of action, will it be possible for the property of defendant, in this state, to be subjected to the satisfaction of plaintiff's claim?

If action upon these notes could be maintained only at the domicile of the debtor, that is in Venezuela, as contended for by defendant, and judgment recovered there, the plaintiff would be no better off, so far as his remedy here is concerned, because judgments are *bona notabilia* also in the jurisdiction in which they were obtained, or recorded and therefore no better grounds for an action of this kind, outside the jurisdiction where obtained, than would be a promissory note outside of the state where the debtor resides.

We think both upon authority and reason the demurrer should be overruled.