# McADOO v. ORMES.

---

JUDGMENT OF COURT OF CLAIMS; APPROPRIATION TO PAY; CLAIMANTS; SUIT AGAINST UNITED STATES; JURISDICTION; GENERAL APPEARANCE.

1. Where money has been appropriated by Congress to satisfy a finding of the court of claims, the officials of the Treasury Department are charged with the ministerial duty of making payment upon demand of the person in whose favor the appropriation has been made, and may be compelled to make payment by mandamus, or a court of equity, with jurisdiction to appoint a receiver of the fund and control its disposition, may compel its delivery through a mandatory writ of injunction. (Citing *Sanborn* v. *Maxwell*, 18 App. D. C. 245; *Roberts* v. *Consaul*, 24 App. D. C. 551; *Jones* v. *Rutherford*, 26 App. D. C. 114; and *Bryan* v. *Curtis*, 26 App. D. C. 95.)

2. A suit in equity by the administrator of an attorney, to establish a lien for attorney's fees upon a fund in the Treasury of the United States appropriated by Congress to pay a judgment of the court of claims in favor of the attorney's client, to enjoin the Treasurer and the Secretary of the Treasury from paying such fund to the client, and to have a receiver of the fund appointed, is not a suit against the United States, within the rule that the government cannot be sued except by its consent.

3. The Secretary of the Treasury and the Treasurer of the United States joined with the claimant as defendants in an action to establish an attorney's lien upon a fund appropriated by Congress to pay a judgment of the court of claims cannot object to the jurisdiction of the supreme court on the ground that debts due from the United States have no situs in the District of Columbia, where the claimant of the fund, a nonresident of the District, voluntarily appeared and answered without objection to the jurisdiction of the court.

No. 3078.   Submitted January 10, 1918.   Decided February 4, 1918.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia, granting an injunction against the Secretary of the Treasury and the Treasurer of the United States, restraining them from paying out a certain fund in their hands.                                                   *Affirmed.*

The COURT in the opinion stated the facts as follows:

Mrs. Belva A. Lockwood brought a suit in equity in the supreme court of the District of Columbia to establish an equitable lien for attorney's fees upon a fund of $1,200 in the Treasury of the United States appropriated by Congress (38 Stat. at L. 962, 981, chap. 140) to pay a judgment of the court of claims in favor of one Susan Sanders. Injunction was prayed against defendant Sanders to restrain her from demanding or receiving the fund, and against defendants William G. McAdoo and John Burke, appellants, as Secretary of the Treasury and Treasurer of the United States, respectively, from paying out the fund. Plaintiff also prayed the appointment of a receiver to demand and receive the fund and a decree against defendant Sanders for the amount of her claim.

Defendant Sanders voluntarily appeared and answered, de-

nying that she was indebted to plaintiff. Defendants McAdoo and Burke answered, admitting the existence of the fund in the Treasury, and assuring the court that the fund would be retained to await the final disposition of the cause. They, however, objected to the jurisdiction of the court, on the ground that debts due from the United States have no situs in the District of Columbia, and that the bill failed to state that the United States or defendant Sanders elected to make the fund payable in the District of Columbia.

This appeal was taken from a decree in favor of plaintiff, the terms of which are not material to the consideration of the questions involved, since only defendants McAdoo and Burke have appealed, defendant Sanders having elected to abide by the order of the court below.

*Mr. John E. Laskey,* United States Attorney, and *Mr. Mabry C. Van Fleet,* Special Assistant, for the appellants, in their brief cited:

*Borcherling* v. *United States,* 35 Ct. Cl. 335; *Brashear* v. *Mason,* 6 How. 92, 100; *Bryan* v. *Curtis,* 26 App. D. C. 95; *Buchanan* v. *Alexander,* 4 How. 20; *California* v. *Southern P. Co.* 157 U. S. 229; *Decatur* v. *Paulding,* 14 Pet. 297, 513; *Re Coit,* 3 App. D. C. 250; *Jones* v. *Rutherford,* 26 App. D. C. 124; *Mallow* v. *Hinde,* 12 Wheat. 193; *Minnesota* v. *Hitchcock,* 185 U. S. 373, 387; *Mississippi* v. *Durham,* 4 Mackey, 235; *Oregon* v. *Hitchcock,* 202 U. S. 60, 61, 68; *Price* v. *Forrest,* 173 U. S. 410, 423; *Roberts* v. *Consaul,* 24 App. D. C. 561; *Seymour* v. *South Carolina,* 2 App. D. C. 245; *Louisiana* v. *McAdoo,* 234 U. S. 627, 628; *United States* v. *Borcherling,* 185 U. S. 223, 231, 233, 235; *United States* v. *Guthrie,* 17 How. 284; *United States* v. *Louisville,* 169 U. S. 249; *United States* v. *Lynch,* 137 U. S. 280; *United States, use of Mackey* v. *Coxe,* 18 How. 100, 103; *United States ex rel. Parish* v. *MacVeagh,* 214 U. S. 124; *Vaughan* v. *Northup,* 15 Pet. 1, 6; *Wyman* v. *Halstead,* 109 U. S. 654, 658.

*Miss Mary O'Toole*, for the appellee, in her brief cited:

*Borcherling* v. *United States*, 35 Ct. Cl. 311; *Brashear* v. *Mason*, 6 How. 92; *Bryan* v. *Curtis*, 26 App. D. C. 95; *Buchanan* v. *Alexander*, 4 How. 20; *California* v. *Southern P. Co.* 157 U. S. 229; *Decatur* v. *Paulding*, 14 Pet. 497; *Re Coit*, 3 App. D. C. 246; *Jones* v. *Rutherford*, 26 App. D. C. 114; *Mallow* v. *Hinde*, 12 Wheat. 193; *Minnesota* v. *Hitchcock*, 185 U. S. 373; *Mississippi* v. *Durham*, 4 Mackey, 235; *Oregon* v. *Hitchcock*, 202 U. S. 60; *Price* v. *Forrest*, 173 U. S. 410; *Roberts* v. *Consaul*, 24 App. D. C. 551; *Seymour* v. *South Carolina*, 2 App. D. C. 240; *Louisiana* v. *McAdoo*, 234 U. S. 627; *United States* v. *Borcherling*, 185 U. S. 223; *United States* v. *Guthrie*, 17 How. 284; *United States* v. *Jordan*, 113 U. S. 418; *United States* v. *Louisville*, 169 U. S. 249; *United States, use of Mackey* v. *Coxe*, 18 How. 100; *Vaughan* v. *Northup*, 15 Pet. 1; *Wyman* v. *Halstead*, 109 U. S. 654.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is contended by the appellants that this action is in effect a suit against the United States, and, the government not having consented to be sued, the court was without jurisdiction. It is well settled in this jurisdiction that, where money has been appropriated by Congress to satisfy a finding of the court of claims, the officials of the Treasury Department are charged with the ministerial duty of making payment upon demand of the person in whose favor the appropriation has been made, and they may be compelled to make payment by mandamus; or a court of equity, with jurisdiction to appoint a receiver of the fund and control its disposition, may compel its delivery through a mandatory writ of injunction. *Sanborn* v. *Maxwell*, 18 App. D. C. 245; *Roberts* v. *Consaul*, 24 App. D. C. 551; *Jones* v. *Rutherford*, 26 App. D. C. 114; *Bryan* v. *Curtis*, 26 App. D. C. 95. In the *Consaul Case*, the court, considering the exact question here under consideration, said: "Assuming, as we must for the purposes of the present appeal, that the court below had jurisdiction of the subject-matter, we have no doubt

of its jurisdiction to control the action of the appellant, notwithstanding his official capacity, in respect of the payment of the fund. The suit is in no sense against the United States. The money having been appropriated and directed to be paid to the claimant, they have no interest in the controversy. By the act of appropriation the appellant, as Treasurer of the United States, is charged with the plain, ministerial duty of making immediate payment upon the demand of the person specified therein. If unrestrained by the order of a court having jurisdiction in the premises, he should refuse to make the payment to the claimant, a court of law would compel him to do so by writ of mandamus. *Roberts* v. *United States,* 13 App. D. C. 38, 176 U. S. 221, 231, 44 L. ed. 443, 447, 20 Sup. Ct. Rep. 376. For the same reason a court of equity, having jurisdiction to appoint a receiver of the fund and to control its disposition, may compel its delivery through a mandatory writ of injunction."

The exact question here involved, so far as our investigation goes, has not been passed upon by the Supreme Court of the United States; but the court has, in many cases and under a variety of conditions, defined when a suit against an officer of the United States is a suit against the United States itself. The single conclusion reached in all the cases is that a suit against officers of a State is a suit against the State itself when the relief asked will operate as a judgment against the State. *Re Ayers,* 123 U. S. 443, 31 L. ed. 216, 8 Sup. Ct. Rep. 164; *Minnesota* v. *Hitchcock,* 185 U. S. 373, 46 L. ed. 954, 22 Sup. Ct. Rep. 650. However, it by no means follows that every suit against an officer is a suit against the State. In the *Ayers Case,* after holding that the suit was against the United States, the court was careful to insert the following qualification: "But this is not intended in any way to impinge upon the principle which justifies suits    *   *   *    against officers in their official capacity either to arrest or direct their official action by injunction or mandamus, where such suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest." A similar qualification was also announced in the *Hitchcock*

*Case,* where the court said: "Of course, this statement has no reference to and does not include those cases in which officers of the United States are sued, in appropriate form, to compel them to perform some ministerial duty imposed upon them by law, and which they wrongfully neglect or refuse to perform. Such suits would not be deemed suits against the United States within the rule that the government cannot be sued except by its consent, nor within the rule established in the *Ayers Case.*"

This seemingly broad rule has been enlarged where injunctions have been upheld against government officers in cases where neither the refusal to perform a plain official duty nor the threatened violation of such a duty was involved. In *Philadelphia Co.* v. *Stimson,* 223 U. S. 605, 56 L. ed. 570, 32 Sup. Ct. Rep. 340, injunction was upheld to restrain the Secretary of War from including within harbor lines portions of the shore over which the United States had no control. The rule was there stated as follows: "If the conduct of the defendant constitutes an unwarrantable interference with property of the complainant, its resort to equity for protection is not to be defeated upon the ground that the suit is one against the United States. The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded. *Little* v. *Barreme,* 2 Cranch, 170, 2 L. ed. 243; *United States* v. *Lee,* 106 U. S. 196, 220, 221, 27 L. ed. 171, 181, 182, 1 Sup. Ct. Rep. 240; *Belknap* v. *Schild,* 161 U. S. 10, 18, 40 L. ed. 599, 601, 16 Sup. Ct. Rep. 443; *Tindal* v. *Wesley,* 167 U. S. 204, 42 L. ed. 137, 17 Sup. Ct. Rep. 770; *Scranton* v. *Wheeler,* 179 U. S. 141, 152, 45 L. ed. 126, 133, 21 Sup. Ct. Rep. 48. And in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. *Osborn* v. *Bank of United States,* 9 Wheat. 738, 843, 868, 6 L. ed. 204, 229, 235; *Davis* v. *Gray,* 16 Wall. 203, 21 L. ed. 447; *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 10, 35 L. ed. 363, 365, 11 Sup. Ct. Rep. 699; *Scott* v. *Donald,* 165 U. S. 107, 112, 41 L. ed. 648, 653, 17 Sup. Ct. Rep. 262; *Smyth* v. *Ames,* 169 U. S. 466, 42

L. ed. 819, 18 Sup. Ct. Rep. 418; *Ex parte Young*, 209 U. S. 123, 159, 160, 52 L. ed. 714, 728, 729, 13 L.R.A.(N.S.) 932, 28 Sup. Ct. Rep. 441, 14 Ann. Cas. 764; *Ludwig* v. *Western U. Teleg. Co.* 216 U. S. 146, 54 L. ed. 423, 30 Sup. Ct. Rep. 280; *Herndon* v. *Chicago, R. I. & P. R. Co.* 218 U. S. 135, 155, 54 L. ed. 970, 976, 30 Sup. Ct. Rep. 633; *Hopkins* v. *Clemson Agri. College.* 221 U. S. 636, 643–645, 55 L. ed. 890, 894, 895, 35 L.R.A.(N.S.) 243, 31 Sup. Ct. Rep. 654. And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred. *Noble* v. *Union River Logging R. Co.* 147 U. S. 165, 171, 172, 37 L. ed. 123, 125, 126, 13 Sup. Ct. Rep. 271; *American School* v. *McAnnully,* 187 U. S. 94, 47 L. ed. 90, 23 Sup. Ct. Rep. 33. The complainant did not ask the court to interfere with the official discretion of the Secretary of War, but challenged his authority to do the things of which complaint was made. The suit rests upon the charge of abuse of power, and its merits must be determined accordingly; it is not a suit against the United States."

The cases relied upon by appellants are not here analogous, in that they either are cases involving attempts to control the exercise of discretion reposed in the official by law, or cases involving rival administration. In *United States* v. *Borcherling,* 185 U. S. 223, 46 L. ed. 884, 22 Sup. Ct. Rep. 607, an antecedent receiver in New Jersey, the domicil of the claimant, was held entitled to receive the proceeds of an appropriation as against a receiver subsequently appointed in the District of Columbia. In *Wyman* v. *Halstead* (*Wyman* v. *United States*) 109 U. S. 654, 27 L. ed. 1068, 3 Sup. Ct. Rep. 417, the conflict arose between administrators of deceased claimants in Tennessee and an administrator appointed in the District of Columbia. The administrator in the District of Columbia held the three drafts of the government issued in payment of the claims appropriated for by Congress. The Treasurer refused to pay the drafts without the indorsement of the Tennessee administrators, but the court does not seem to have regarded this as essential to give a valid acquittance. The decision turned upon the ground that "the United States having, in the phrase of

Mr. Justice Story, 'an ubiquity throughout the Union,' may in their discretion, exercised through the appropriate officers, pay a debt due to the estate of a deceased person, either to the administrator appointed in the State of his domicil, or to an ancillary administrator duly appointed in the District of Columbia; and the exercise of their discretion in this regard cannot be controlled by writ of mandamus."

The court, in the course of its opinion in *Jones* v. *Rutherford*, 26 App. D. C. 114, distinguishing the cases of *Vaughan* v. *Northup*, 15 Pet. 1, 10 L. ed. 639; *United States use of Mackey* v. *Coxe*, 18 How. 100, 15 L. ed. 299, and *Wyman* v. *Halstead*, supra, cited at length and relied upon by appellants, said: "These are all plainly cases of rival administrations, wherein it was held that administration at the place of death of the deceased person was the proper and paramount administration which the Treasury officials should recognize; and that, in antagonism to such administration, there was no room at the seat of government for a rival, or a different, administration by reason of any supposed situs of assets in this District."

In the present case, no such issue is involved. It is not disputed, and indeed it cannot be, that the receiver has the right and power to execute a valid acquittance to the United States, nor is it contended that the United States is more than a mere disinterested stakeholder in this whole controversy. The dispute here is between the administrator of plaintiff Lockwood and defendant Sanders. No demand, so far as this record discloses, was ever made by Sanders upon appellants to pay her the sum appropriated at her domicil in the State of Oklahoma. On the contrary, she voluntarily came into the District of Columbia and submitted herself to the jurisdiction of the courts, and by her failure to appeal has sanctioned the order of the court directing payment to the receiver. It follows that obedience to the order of the court can in no way prejudice the rights of the government. Nor is the judgment one against the United States, but merely against its officials to require the performance of a ministerial act.

The remaining contention of appellants is that debts due from the government of the United States have no situs at the seat of

government. It would be a strange rule that no debt due from the United States could have a situs in the District of Columbia. Why discriminate against the District of Columbia in favor of the balance of the Union? True, as said by Mr. Justice Story in *Vaughan* v. *Northup,* 15 Pet. 1, 10 L. ed. 639: "The debts due from the government of the United States have no locality at the seat of government. The United States, in their sovereign capacity, have no particular place of domicil, but possess, in contemplation of law, an ubiquity throughout the Union; and the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicil." This is equivalent merely to a declaration that debts due from the government have not an exclusive situs or locality at the seat of government. The sovereign power of the United States extends to all parts of the Union, and when jurisdiction of the subject-matter and the parties concur in the District of Columbia, the courts possess the same jurisdiction as do the Federal courts under like circumstances in any State of the Union. It merely means that the domicil of the United States, in their sovereign capacity, being coextensive with the Union, is not confined to the National Capital by reason of the fact that the Treasury, where the financial affairs of the government are transacted, and where its obligations are payable, is located here.

But the question before us may be readily disposed of when applied to the present case. Defendant Sanders, a nonresident of the District of Columbia, without waiting for service by publication under sec. 105 of the District Code [31 Stat. at L. 1206, chap. 854] voluntarily appeared and answered the bill without objection to the jurisdiction of the court. The question of whether the fund due her from the United States was "property within the District," within the meaning of sec. 105, is not material. It is a settled rule of the Federal courts that a general appearance by a defendant waives the objection that he has been sued in a State or district where he does not reside, and confers jurisdiction of the person to the same extent as if he were a resident of the State or district and had been duly served with process. *Toland* v. *Sprague,* 12 Pet. 300, 9 L. ed.

1093; *First Nat. Bank* v. *Morgan,* 132 U. S. 141, 33 L. ed. 282, 10 Sup. Ct. Rep. 37; *Texas & P. R. Co.* v. *Cox,* 145 U. S. 593, 36 L. ed. 829, 12 Sup. Ct. Rep. 905. It would seem, therefore, in the light of these decisions, that it is immaterial whether defendant Sanders did or did not have property in the District of Columbia, or whether the fund in controversy had or had not a situs here. Since the real party in interest, the nonresident defendant, waived objection to the jurisdiction and elected to abide by the decree, appellants are not in position to object for her. No claim is made here that the fund in question has a situs in Oklahoma or in any other place outside of this jurisdiction. It must, therefore, be property in the District of Columbia.

The contentions of appellants are wholly without merit. The government is a disinterested party,—a mere stakeholder,—and appellants are charged only with the ministerial duty of obeying the order of the court, which furnishes a complete acquittance. Just why this appeal should have been prosecuted by appellants, after the real party in interest had concurred in the decree and abandoned the suit, is not apparent, since the United States cannot be either a winner or loser from the judgment, whatever it may be.

The decree is affirmed, with costs. *Affirmed.*

A petition for the allowance of an appeal to the Supreme Court of the United States was allowed on February 25, 1918.