**Victor F. HORST**

v.

**DEPARTMENT OF REVENUE**

**No. 107718**

Appellate Tax Board
Trial Court of the
Commonwealth of Massachusetts

**March 24, 1982**

Jerald D. Burwick, Esq., for the appellant.
John J. Tracey, Esq., for the appellee.

This is an appeal under the formal procedure pursuant to G.L. Ter. Ed., c. 62C, sec. 39 from the refusal of the appellee to abate income taxes assessed under G.L. Ter. Ed., c. 62, secs. 5A and 63 for the years 1975, 1976, 1977 and 1978.

These findings of fact and report are made at the request of the appellant under G.L. c. 58A, sec. 13, as amended, and Rule 32 of the Rules of Practice and Procedure of the Appellate Tax Board.

### FINDINGS OF FACT AND REPORT

The appellant, a Florida resident, sold his land in Chatham, Massachusetts December 18, 1974 for $700,000, the payment of which took the form of $90,000 in cash and a note for $610,000. The note was payable over five years and bore interest at 8% per annum. In 1975 and 1976 the appellant reported the installment note interest he received on his tax returns while he omitted that interest on his returns for 1977 and 1978. For the latter years, the appellee assessed a

deficiency based on that omitted interest received by the appellant.

Applications for abatement on tax returns made for the years 1975, 1976 and 1977 were timely filed on April 3, 1979 with a consent to the Commissioner's failure to act in six months.

An application for abatement on the 1978 tax return was timely filed October 10, 1979. All the applications were denied December 11, 1979 and the appellant filed a timely appeal to this Board on February 6, 1980.

"Approval of Installment Sale Number 101536" from the appellee was the taxpayer's authority for reporting his gain on the installment basis and to secure the payment of the taxes he gave the appellee a letter of credit, all pursuant to statutory requirements.

Thus, treating the sale as an "installment transaction" under G.L. Ter. Ed., c. 62, sec. 63 and reporting a long-term capital gain of $231,096 on the sale in his 1975 income tax return for Massachusetts, the appellant paid an income tax of $20,799. Interest of $28,980 derived from the note was also reported and a tax at 9% plus a surtax of 7-1/2% amounted to $2,803.81, plus interest of $74.86.

A gain of $118,184 on the sale was reported for 1976 and a tax of $12,705 was paid. Interest on the note amounting to $24,360 was again reported and a tax of $2,618.70 was paid on the interest.

For 1977 a gain of $247,756 was reported and a tax of $26,634 was paid. However, no interest was reported although $15,120 of interest was realized on the installment note that year and the appellee assessed an additional tax on that interest in the amount of $1,603.

On the installment contract for 1978, the appellant reported a gain of $117,907, paid a tax of $12,675, but, again, reported no interest although he actually received $5,040 for which the appellee assessed a deficiency of $521.27. The appeal seeking abatement on all assessments on interest was denied and a decision by the Board was rendered for the appellee.

## OPINION

The issue in this case is whether or not interest income received by a non-resident on an installment note arising out of the sale of real estate located in Massachusetts is taxable to the non-resident by the Commonwealth.

The taxpayer claims that the interest earned on the installment note is not taxable because G.L. Ter. Ed., c. 62, sec. 5A does not purport to tax such interest income, and even if the statute did, the statute would be unconstitutional as exceeding the state's power to tax a non-resident.

We first addressed the question as to whether the legislature intended to and under the words of the statute actually did tax interest income from an installment sale.

That the interest income was part of appellant's federal gross income is conceded. It follows that the interest was also part of the taxpayer's Massachusetts adjusted gross income and taxable income "unless a particular provision of the tax statute exempts it from taxation." See, **Israel Dogon v. State Tax Commission,** 370 Mass. 699, 701.

General Laws, Ter. Ed., c. 62, sec. 5A provides in part:

"(a) The amount of the Part A taxable income and the Part B taxable income of any non-resident of the commonwealth derived from the Massachusetts gross income of such person shall be taxed in accordance with the provisions of section four. The Massachusetts gross income shall be determined solely with respect to items of gross income from sources within the commonwealth of such person . . . Items of gross income from sources within the commonwealth are items of gross income derived from or effectively connected with any trade or business, including employment carried on by the taxpayer in the commonwealth or derived from the ownership of

any interest in real or tangible personal property located within the commonwealth. . . ."

General Laws, Ter. Ed., c. 62, sec. 5A, providing for the taxation of non-residents on income, was created by St. 1955, c. 780 but took the form applicable to the issues in this case by virtue of the changes made by St. 1971, c. 555, sec. 5 and by St. 1973, c. 723, sec. 2.

The relevant provision with respect to the kind and source of income to be taxed as appearing in St. 1971, c. 555 provided: "Section 5A . . . Income from sources within the commonwealth shall include income **derived from or connected with** any business, trade, profession or occupation carried on in the commonwealth or the ownership of any interest in real or tangible personal property located in the commonwealth." (Emphasis supplied.)

Under that statute and G.L. Ter. Ed. c. 62, sec. 63 the state taxed the interest received by non-residents on an installment note because it was determined to be "derived from or connected with . . . (an) interest in real . . . property." In the opinion of the Board, that language clearly required the taxation of interest.

However, if there could be any possible doubt in this matter, the Board believes it must have been resolved by two subsequent statutory changes made by St. 1973, c. 723 which amended section 5A (in the form first set forth above) and simultaneously amended section 63. As can be seen from comparing the wording set forth above, the change in section 5A was minor.

However, section 5A must be interpreted in conjunction with G.L. Ter. Ed., c. 62, sec. 63 and its provisions with a view to effectuating the legislative intent and harmonizing the two sections. **Assessors of Brookline v. Prudential,** 310 Mass. 300, 307.

Section 63 first appeared in our income tax law by virtue of St. 1958, c. 308. It likewise was amended by St. 1971, c. 555 and St. 1973, c. 723. This section, under

certain conditions, makes extensive provisions for the taxation of a gain as an "installment transaction." The latter means a transaction qualifying under Internal Revenue Code (I.R.C.) section 453 and applies to both residents and non-residents.

If brief, I.R.C. section 453 provides that certain persons who dispose of property "on an installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is complete, bears to the total contract price."

Section 63 provides for a modification of the taxpayer's federal gross income depending on what use the taxpayer makes of I.R.C. section 453. Section 63 provides in part:
"Section 63(c). Any person having an installment transaction in a taxable year shall file a return for such taxable year and shall, . . . file with the return an **election** to be treated either under **paragraph (d) or (e)** of this section." (Emphasis supplied.)

Section 63(d) and (e) offer the taxpayer the choice of reporting on the installment basis or electing to pay the full tax in the year the gain was realized with modifications being made or not being made to the federal gross income according to his choice.

It is to be noted that in section 63 as per St. 1958, sec. 308 and St. 1971, c. 555, there is no reference to the words "sources within the commonwealth". The only use of that kind of language appears in section 5A. However, by virtue of the amendment by St. 1973, c. 723, which also amended section 5A at the same time, the following language was added to section 63:
"Section 63(d) . . . **All items** of federal gross income arising from such installment transactions shall be deemed to be income from **sources within the commonwealth.**" (Emphasis supplied.)

Reading section 5A and section 63(d) together, it seems very clear to the Board that the legislature not only intended but succeeded in stating its intention to tax interest on the installment transaction. The generality and sweep of the language clearly includes within its meaning "interest." The words "all items" cannot but include interest since the interest was "arising from such installment transactions."

There is another reference to "**all such items**" in section 63(e). Under this provision if the taxpayer had **elected** not to report the sale as an installment transaction in Massachusetts and paid the full tax in the year of the sale, but had **elected** to make use of I.R.C. 453 for federal tax purposes, then, "the federal gross income of such person shall be modified," for purposes of applying section 2, by reducing federal gross income by the sum of "**all such items.**"

Thus, the state would not have taxed interest received by the taxpayer in that situation, **i.e.**, where he had **elected** 63(e); interest income would have been deducted from his federal gross income to reach Massachusetts gross income.

The appellant argues that the language in section 63(d) above quoted only refers to installment payments of principal. The Board's answer is that this interpretation would render the additional language of section 63(d) by amendment surplusage since the requirement for the reporting of installment principal was already required by other provisions. A rule of statutory interpretation is that words in a statute are not to be considered as superfluous. In **Bolster v. Comm'r of Corps & Tax'n,** 319 Mass. 81, the Court said at page 84-85:

"None of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without over-emphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature . . ."

The appellant also cites two regulations promulgated by the appellee which supposedly support his position. However, it is pointed out that these regulations, dated October 15, 1971, were rendered obsolete by St. 1973, c. 723, and by the ruling of the Commissioner dated November 7, 1979. In answer to the precise question raised here, that ruling stated "The interest portion of the proceeds, which resulted from the sale of Massachusetts real estate, is income from sources within the commonwealth under General Laws, chapter 62, section 63(d), and is taxable as interest under chapter 62." The Board was of the opinion that the Commissioner's ruling was correct.

The second issue in this case arises from the appellant's challenge of the constitutionality of the application of section 5A to him. The appellant argues that the interest stems from "the installment obligation note which is intangible property, with a situs outside of the commonwealth in the hands of a non-resident holder" and is thus beyond the jurisdiction of the state to reach for taxation. He cites the Fourteenth Amendment of the United States Constitution and several United States Supreme Court cases, including **Alpha Cement Company v. Massachusetts,** 268 US 203. For tax purposes, the Board is of the opinion that the appellant places undue emphasis on the situs of the note and its intangible character.

For an extended discussion on a state's jurisdiction to impose an income tax on non-residents, see, **Shaffer v. Carter,** 252 US 37, 49.

As to the matter of the situs of a note,[*] intangible personal property, **cf. Wyman v. Halstead,** 109 US 654, where the Court said at page 656, citing **Pinney v. McGregory,** 102 Mass. 186:

---

[*] The debtor in this appeal was the Town of Chatham which purchased the appellant's land.

"The general rule of law is well settled, that for the purpose of founding administration all simple contract debts are assets at the domicil of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable."

In any event, the basis for the state's jurisdiction to tax the income is the fact that the non-resident sold real estate in Massachusetts over which real estate Massachusetts clearly had jurisdiction. The taxpayer could not have demanded as a matter of right the privilege of paying the tax on an installment basis. This was granted as a matter of grace by our legislature. The deferral of the payment of the tax which was immediately due was allowed for the convenience and benefit of the taxpayer.

We note that the appellant states in his brief that he does not object to paying a tax on the installment of principal which also had its basis in the same intangible property, i.e., the note. It appears to the Board that if the appellant concedes that Massachusetts has jurisdiction to tax the installment principal based on an intangible, he should also concede the state's jurisdiction to tax the interest. The point is, of course, that the whole installment transaction in all its facets and phases derives from and is directly connected with the sale of real estate in Massachusetts. The law and the courts of the commonwealth protect his rights and are available to him in the event of default or legal actions for collection. In the opinion of the Board, this clearly establishes sufficient "nexus" to give Massachusetts jurisdiction to tax the interest. See, **Mobil Oil Corporation v. the Commissioner of Taxes of the State of Vermont** (Mobil), 445 US 425.

There is a further reason why the non-resident may not attack this tax on a constitutional ground. As was pointed out in our discussion of the first issue, the state, under section 63, gives the taxpayer as a matter of grace an "election" and under one of his alternatives, which he did not choose, he could have escaped tax on all installment payments, both principal and interest. He elected the alternative which required the payment of interest. Thus, in effect, he agreed to pay the tax on the interest in consideration for his privilege of not having to pay the full tax in the year the transaction occurred.

The taxpayer has a heavy burden in attempting to prove a statute taxing him is unconstitutional. "All rational presumptions are made in favor of the validity of every legislative enactment. Enforcement is to be refused only when it is in manifest excess of legislative power . . . It is only when a legislative finding cannot be supported upon any rational basis or fact that reasonably can be conceived to sustain it that a court is empowered to strike it down . . . If the question is fairly debatable, courts cannot substitute their judgment for that of the legislature." **Druzik v. the Board of Health of Haverhill**, 324 Mass. 129, 138-9.

In conclusion, the Board reasoned that the relevant statutes when read together and harmonized contained provisions which taxed the interest here in question with reasonable clarity and the appellant failed to sustain his burden of proof that the statutes were unconstitutional as applied to him.

Our decision for the appellee was promulgated March 24, 1981.

APPELLATE TAX BOARD
By: John P. Mulvihill, Chairman
A true copy
Attest:
Steven C. Douglas
Asst. Clerk of the Board