THE UNITED STATES, USE OF JAMES MACKEY ET AL. PLAINTIFFS IN ERROR, v. RICHARD S. COXE.

Administrators upon an estate who were appointed in the Cherokee nation, had a right to maintain a suit or prosecute a claim for money in the District of Columbia, and a payment to a person acting under a power of attorney from them would have been valid.

But where this person, instead of receiving the money under his power of attorney, took out letters of administration in the District of Columbia, and then signed a receipt as attorney for money paid by himself as administrator to himself as attorney for the Cherokee administrators, this receipt is good, and the surety upon his administration bond is not responsible to the Cherokee heirs.

The Cherokee nation are so far under the protection of the laws of the United States, that they may be considered, for the purposes above named, as a State or territory of the United States.

THIS case was brought up by writ of error, from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington.

The case is stated in the opinion of the court.

It was argued by *Mr. Chitton*, for the plaintiffs in error, and by *Mr. Carlisle* and *Mr. Bradley*, for the defendant.

Mr. Justice McLEAN delivered the opinion of the court.

This is a writ of error to the circuit court for the District of Columbia.

The action was brought against the defendant as surety in the administration bond of Austin J. Raines, administrator of Samuel Mackey, late of the Cherokee nation.

Raines received from James Mackey, Joseph Talley, and Preston T. Mackey, as administrators of Samuel Mackey, deceased, a power of attorney for them and in their names to petition the congress of the United States to settle and release the claim of the United States against the said Samuel Mackey, deceased, as principal, and John Drenner, Lewis Evans, and Hiro T. Wilson, as securities; and after the passage of any law in rela-

tion to said claim by congress, to receive all moneys that may be due the estate of the said Mackey, deceased, from the treasurer of the United States, and full receipts, acquittances, and relinquishments thereof to make in their name; and further, to adjust and settle with the treasurer of the United States, or other officers of the government, all other claims of said Mackey against the United States, and to receive all moneys due from the United States to said Mackey on any account whatever.

Raines came to Washington and procured a settlement of the accounts between the government and Samuel Mackey, deceased; but the treasury department refused to pay him the balance due Mackey upon the power of attorney, and required him to take out letters of administration. He thereupon applied to the orphans' court of the county of Washington, in the District of Columbia, for letters of administration, which were granted upon his executing bond, with the defendant and James Reeside as sureties. He then received from the treasury the sum of $10,513.05, out of which he paid the expense of administration, and for the balance he executed the following receipt: —

"7th July, 1841. Received of Austin J. Raines, administrator of Samuel Mackey, deceased, the sum of ten thousand five hundred and thirteen dollars and five cents, being the amount due to the representatives next of kin and distributees of said Samuel Mackey, from said administrator.

Signed,      JAMES MACKEY,<br>
JOSEPH TALLEY,<br>
PRESTON T. MACKEY.<br>
By their attorney in fact, A. J. RAINES."

Reeside, the co-obligor in the administration bond, having died several years ago, the process was served only on the defendant.

The declaration contained several counts, stating that the said Samuel Mackey died intestate, leaving Sarah Mackey, his widow, and James Mackey, Preston T. Mackey, William Mackey, George Mackey, Nancy Talley, wife of Joseph Talley, and Corine Mackey, all being citizens of the Cherokee nation, and that, by the laws of said Cherokee nation, the widow and children were distributees of the deceased.

The defendant filed a general plea of performance, on which issue was joined.

On the trial before the jury, among other prayers for instruction was the following: " If the jury find from the evidence that Austin J. Raines, as administrator of Samuel Mackey, deceased, received from the treasury of the United States the sum of $10,513.05, and after deducting the expenses of administration there remained in his hands the clear sum of $10,505.20\frac{1}{2}$,

9 *

and no debts of said deceased are shown payable by said administrator; and James Mackey, Joseph Talley, and Preston T. Mackey were the original administrators of said Samuel Mackey, under the laws of the Cherokee nation, the burden of proof is on the defendant to show that said Raines paid said sum of $10,505.20½ to said James Mackey, Joseph Talley, and Preston T. Mackey, or the survivors of them; and although the jury may find that the paper offered in evidence, purporting to be a power of attorney from said James Mackey, Joseph Talley, and Preston T. Mackey to said Raines is genuine, yet the said Raines had no authority to receipt for said parties by himself, as their attorney in fact, to himself as administrator, and that such receipt is not a payment by him as administrator of said parties; and unless such payment be proved otherwise than by such receipt, the said Raines has not performed the condition of this bond as administrator of Samuel Mackey, and the said defendant is liable in this action to the said James Mackey, Joseph Talley, and Preston T. Mackey, or the survivors of them, for the said sum of $10,505.20½, with interest thereon from the date when the same was received;" which instruction was refused, and to which an exception was taken.

There were other exceptions, but this one presents the material points in the case.

By the treaty made between the United States and the Cherokee nation, dated March 14, 1835, in article 5, the United States covenanted and agreed that " the lands ceded to the Cherokee nation in the foregoing article shall, in no future time, without their consent, be included within the territorial limits or jurisdiction of any State or territory. But they shall secure to the Cherokee nation the right of their national councils to make and carry into effect all such laws as they may deem necessary for the government and protection of the persons and property within their own country belonging to their people, or such persons as have connected themselves with them : provided always, that they shall not be inconsistent with the constitution of the United States, and such acts of congress as have been or may be passed regulating trade and intercourse with the Indians," &c.

The Cherokees are governed by their own laws. As a people, they are more advanced in civilization than the other Indian tribes, with the exception, perhaps, of the Choctaws. By the national council their laws are enacted, approved by their executive, and carried into effect through an organized judiciary. Under a law "relative to estates and administrators," letters of administration were granted to the persons above named on the estate of Samuel Mackey, deceased, by the probate court, with

as much regularity and responsibilities as letters of administration are granted by the state courts of the Union.

This organization is not only under the sanction of the general government, but it guarantees their independence, subject to the restriction that their laws shall be consistent with the constitution of the United States, and acts of congress which regulate trade and intercourse with the Indians. And whenever congress shall make provision on the subject, the Cherokee nation shall be entitled to a delegate in the national legislature.

It is refreshing to see the surviving remnants of the races which once inhabited and roamed over this vast country as their hunting-grounds, and as the undisputed proprietors of the soil, exchanging their erratic habits for the blessings of civilization.

A question has been suggested whether the Cherokee people should be considered and treated as a foreign State or territory. The fact that they are under the constitution of the Union, and subject to acts of congress regulating trade, is a sufficient answer to the suggestion. They are not only within our jurisdiction, but the faith of the nation is pledged for their protection. In some respects they bear the same relation to the federal government as a territory did in its second grade of government, under the ordinance of 1787. Such territory passed its own laws, subject to the approval of congress, and its inhabitants were subject to the constitution and acts of congress. The principal difference consists in the fact that the Cherokees enact their own laws, under the restriction stated, appoint their own officers, and pay their own expenses. This, however, is no reason why the laws and proceedings of the Cherokee territory, so far as relates to rights claimed under them, should not be placed upon the same footing as other territories in the Union. It is not a foreign, but a domestic territory—a territory which originated under our constitution and laws.

By the 11th section of the act of 24th of June, 1812, it is provided "that it shall be lawful for any person or persons to whom letters testamentary or of administration hath been or may hereafter be granted, by the proper authority in any of the United States or the territories thereof, to maintain any suit or action, and to prosecute and recover any claim in the District of Columbia, in the same manner as if the letters testamentary or administration had been granted in the District. Under this law the money due to Mackey might have been paid, and, indeed, should have been paid, to Raines, the attorney in fact of the administrators of Mackey. But, through abundant caution, letters of administration were required to be taken out in this District, as a prerequisite to the payment of the money by the treasury department.

No question could arise as to the validity of the Cherokee law under which letters of administration were granted on the estate of Mackey, and as the power of attorney given by the administrators to Raines seems to have been duly authenticated and proved, a payment to the administrator, by the government, would have been a legal payment. The Cherokee country, we think, may be considered a territory of the United States, within the act of 1812. In no respect can it be considered a foreign State or territory, as it is within our jurisdiction and subject to our laws.

Although an executor or administrator cannot sue in a foreign court, in virtue of his original letters of administration, yet he may lawfully, under that administration, receive a debt voluntarily paid in any other State.    Stevens v. Gaylord, 11 Mass. R. 256. In Doolittle v. Lewis, 7 John. Ch. 49, Chancellor Kent held, that a voluntary payment to a foreign executor or administrator was a good discharge of the debt.    Shultz v. Pulver, 3 Paige, 182; Hooker v. Olmstead, 6 Pick. 481.

This suit is brought in the name of the surviving administrators of Mackey and of the distributees.    Regularly, an action by the distributees could not be sustained, unless an application had been made to the orphans' court in this District to order a distribution, and authorize or direct the administrator, Raines, to pay the same.    This administration being ancillary to that of the domicile of the deceased, the distribution would be governed by the law of the domicile.

There appears to have been no creditors of the estate of Mackey in the District of Columbia, and letters of administration were obtained here, as necessary under the decision of the treasury department.    This object being accomplished, and the costs of the administration paid, Raines, as agent of the administrators of the domicile, receipted for the money in their behalf, under the power of attorney from the administrators.    And the question arises, whether this discharges the defendant as surety on the administration bond of Raines.

Under the power of attorney he was authorized to receive all moneys that may be due the estate of Mackey from the treasurer of the United States, and receipt for the same.    He received and receipted for the money as administrator in this District, and then executed a receipt to himself as agent, under the power of attorney as agent for the administrators.

Under the circumstances, it would be a hardship fraught with injustice, to hold the defendant liable as surety on the administration bond.    Raines was the confidential agent of the administrators of Mackey—the money was placed in his hands, under full authority to receive it.    It has never been paid over,

it is said, by reason of the bursting of a boiler, by which Raines lost his life and the money which he had received. But whether this be true or not, the money went into the hands of Raines, who was the agent of the administrators, duly authorized to receive it; and we think, under the peculiar circumstances of the case, the defendant was thereby discharged. Whether for the payment of creditors or distribution among the heirs, the domicile of the deceased was the place to which the money should be transmitted. It would add to the conditions of the administration bond, to hold the defendant responsible for the safe transmission of the money, after it was placed in the hands of the agent of the administrators.

Had the receipt of Raines been duly filed and acted upon, in the court of probate, his surety on his administration bond would have been discharged. The action of the probate court only is wanting, but we think such action was not essential, and that the equity of the case is equally clear without it. The parties are estopped from denying the agency of Raines.

In Vaughan *v.* Northup et al., 15 Pet. 6, this court say: " The debts due from the government of the United States have no locality at the seat of government. The United States, in their sovereign capacity, have no particular place of domicile, but possess in contemplation of law an ubiquity throughout the Union; and the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicile. On the contrary, the administrator of a creditor of the government, duly appointed in the State where he was domiciled at the time of his death, has full authority to receive payment, and give a full discharge of the debt due to his intestate, in any place where the government may choose to pay it."

We think there is no error in the ruling of the court, and the judgment of the circuit court is therefore affirmed.

Justices NELSON and CURTIS stated that they concurred in the decision of the court to affirm the judgment of the circuit court, upon the ground that, as no final account had been settled by the administrator in the orphans' court, and no order had been made by that court, either directing the administrator to pay the balance in his hands to the principal administrators, for distribution by them, or directing a distribution to be made here, there was no breach of the bond. That this being an ancillary administration, it depended upon the discretion of the orphans' court, which granted it, whether the money, remaining in the hands of the ancillary administrator, after the satisfaction of all claims in this jurisdiction, should be distributed here, by the ancillary administrator, or remitted to the principal administrators for distribution; and until that discretion shall be exercised,

and the ancillary administrator directed which of these courses to pursue, he is in no default, and his surety is not liable.