## CAMERON v. RIGGS NAT. BANK OF WASHINGTON, D. C.
### Civ. No. 18955.

District Court of the United States for the District of Columbia.

Dec. 15, 1943.

H. H. Glassie, Jr., of Washington, D. C., and Green & Green, of Jackson, Miss. (Barbour, Garnett, Pickett, Keith & Glas-

sie, of Washington, D. C., of counsel), for plaintiff.

Edmund L. Jones and James C. Rogers (of Hogan & Hartson), both of Washington, D. C., for defendant.

MORRIS, Associate Justice.

This is an action brought to recover certain funds of plaintiff's testatrix, held by the defendant in checking and savings accounts, together with interest on such monies. By a stipulation of facts, as amended, the following appears: Plaintiff's testatrix, Virginia Cameron Martin, died at Jackson, Mississippi, the State of her domicile, on the 15th day of March 1942. In 1934, while living in the District of Columbia, deceased opened checking and savings accounts with the defendant, the balances in which at the time of her death totaled $33,733.20 and $5,142.50, respectively, the latter including interest last credited to October 1, 1941. Plaintiff, having been granted letters testamentary on the 6th day of April 1942 by the Chancery Court of Madison County, Mississippi, made demand by letter, received by the defendant on or about April 14, 1942, for the payment to him of the monies to the credit of his testatrix. Defendant advised plaintiff that it was willing to transfer the said funds to an ancillary executor appointed in the District of Columbia, or to the plaintiff upon being indemnified against claims of possible local creditors, or to make payment without bond of indemnity upon the expiration of one year from the date of decedent's death.[1]

Defendant made a further requirement that a waiver be secured from the Tax Assessor of the District of Columbia, but it is not necessary to discuss this, as the plaintiff stood ready to secure such waiver and subsequently did so.

Upon the refusal of plaintiff to comply with any one of the alternative conditions, the defendant on May 23, 1942, definitely refused to make payment of said monies.

It further appears that on March 16, 1943, three days after the commencement of this suit, the defendant advised plaintiff that, a year having expired since the death of decedent, it would pay all of her monies in its possession to plaintiff. Payment was made thereafter by the defendant to the plaintiff of the sum of $38,933.20, representing the sum of $33,733.20, the balance of decedent's checking account, and the sum of $5,200, the credit balance in the savings account, including interest at the agreed rate. No interest was paid on the funds in the checking account. The payment of such monies was made by defendant and accepted by plaintiff without prejudice to any right of plaintiff to recover damages for defendant's refusal to make earlier payment.

No ancillary administration has been had in the District of Columbia on the estate here involved. The defendant had no knowledge of any claim of any creditor or person domiciled in the District of Columbia against the decedent, and no such claim has become apparent.

The plaintiff has moved for a summary judgment in his favor in the sum of $1,647.-26, representing interest at the rate of 6 per cent per annum on the monies in the checking account, alleged to have been wrongfully withheld from the plaintiff from May 23, 1942, until March 16, 1943.

It is urged by the plaintiff in support of the motion that, under the "general law," a domiciliary executor has title to the personalty of his decedent wherever located, and can give good acquittance for the delivery of same to him, but he cannot bring suit outside the State of his appointment. He urges, however, that, under the statutes of the District of Columbia, an executor duly appointed in any of the United States has full authority to sue for and collect assets of his decedent in the District as far as any debtor or holder of assets is concerned, unless ancillary letters have been granted in the District of Columbia, subject only to the statutory lien of the Assessor of Taxes.

The statutory provisions respecting the rights of a foreign domiciliary executor now in force in the District of Columbia

---

[1] Stipulation of Facts, par. 6: "* * * upon receiving a certificate of plaintiff's appointment as domiciliary executor, a waiver from the District of Columbia tax authorities, and a bond of indemnity with satisfactory corporate surety in the amount of $40,000, or upon the expiration of one year from the date of Virginia Cameron Martin's death * * * upon receipt of a waiver from the District of Columbia tax authorities and a simple letter of indemnity without corporate surety, provided that in the meantime no ancillary administration had been instituted in the District of Columbia, and that no proceedings had been instituted in the District of Columbia for the prosecution of claims against the decedent's estate."

are found in Sections 18—501 and 20—505 of the District of Columbia Code (1940):

"§ 18—501. *Creditors' rights against property of nonresident decedent—Limitation.* On the death of any person not domiciled in the District of Columbia at the time of his death so much of his real and personal estate in the District of Columbia as may be necessary for the payment and discharge of just claims against him of creditors and persons domiciled in the District of Columbia shall also be the subject of administration under authority and direction of the probate court, irrespective of the personal estate of such decedent at his place of domicile or elsewhere: *Provided,* The prosecution of such claims is begun in said court within one year after the death of such decedent. (Mar. 3, 1901, 31 Stat. 1231, ch. 854, § 260; June 30, 1902, 32 Stat. 528, ch. 1329.)

"§ 20—505. *Foreign executors and administrators—Suits by.* It shall be lawful for any person or persons to whom letters testamentary or of administration have been granted by the proper authority in any of the United States or the territories thereof to maintain any suit or action and to prosecute and recover any claim in the District in the same manner as if the letters testamentary or of administration had been granted to such person or persons by the proper authority in the said District; and the letters testamentary or of administration, or a copy thereof certified under the seal of the authority granting the same, shall be sufficient evidence to prove the granting thereof, and that the person or persons, as the case may be, hath or have administration: *Provided, nevertheless,* That the probate court of the District shall have the power, upon the petition of anyone interested, to require from such person or persons the security required by law in like cases from a resident administrator or executor, or the said court may grant auxiliary or ancillary letters, as the case may require, to the same or other persons. (Mar. 3, 1901, 31 Stat. 1242, ch. 854, § 329.)"

Section 18—501 was originally enacted March 3, 1901, as Section 260 of the District of Columbia Code of 1901, 31 Stats. 1231, being amended (in so far as here material) by Act of June 30, 1902, 32 Stats. 528, to make the same applicable to personal as well as real property in the District of Columbia, thus making the statute read as it now does in Section 18—501

above. Section 20—505 has a longer and more varied history. It was originally enacted, without the proviso, in substantially the same terms only eleven years after the establishment of the District of Columbia as Section 11, Chapter 106 of the Act of June 24, 1812, 2 Stats. 758. United States ex rel. Halstead v. Wyman, 2 Mackey 368, at page 372; United States for Use of Mackey et al. v. Coxe, 18 How. 100, 15 L. Ed. 299. By its omission from the District of Columbia Revised Statutes, enacted by the 43rd Congress, First Session, and approved June 22, 1874, such provision was considered repealed. United States ex rel. Halstead v. Wyman, supra; Wyman, etc., v. United States ex rel. Halstead, 109 U.S. 654, 3 S.Ct. 417, 27 L.Ed. 1068. Such provision was, however, re-enacted by the Act approved February 28, 1887, 24 Stats. 431, *with a proviso:* "That the supreme court of the District of Columbia shall have the power, and such power is hereby given to the said court, upon petition of any one interested, to require from such person or persons the security now required by law in like case from a resident administrator or executor."

There is also included in such act a section reading as follows: "Sec. 2. That all exceptions in favor of parties beyond the District of Columbia which may by existing laws be replied [sic] or relied on in any action or proceeding brought in the said District are hereby repealed and abrogated: *Provided,* That this section shall not affect the right of parties in actions now pending."

This statute was further amended by Section 329, Chapter 854, of the Act to Establish a Code for the District of Columbia, approved March 3, 1901, 31 Stats. 1242, so that to the proviso was added the sentence: "Or the said court may grant auxiliary or ancillary letters, as the case may require, to the same or other persons."

Thus amended, the statute read as it now does in Section 20—505, District of Columbia Code (1940).

The plaintiff relies strongly on the case of Kane v. Paul, 14 Pet. 33, 41, 10 L.Ed. 341, decided by the Supreme Court at the January Term, 1840. In that case Paul was one of the executors named in the will of the testator, who died domiciled in Baltimore, Maryland. Kane was subsequently appointed by the Orphan's Court of the County of Washington, in the District of Columbia, as ancillary administrator, d.b.

n.c.t.a., and as such received certain monies from the United States, being the proceeds of an award of indemnity from the French Government. A contest arose as between the local ancillary administrator and the domiciliary executor. The court, referring to the Act of June 24, 1812, states that—"the right to sue in the manner it is given, gives the right to such executor or administrator to recover from any individual within the district of Columbia, effects or money belonging to the testator or intestate, in whatever way they may have been received, if the law does not permit him to retain them on account of some relation borne to the testator or to his executor, which defeats the executor's right; and that letters-testamentary, or of administration obtained in either of the states or territories of this Union, give a right to the person having them, to receive and give discharges for assets, without suit, which may be in the hands of any person within the district of Columbia; * * *."

It is further stated that such right includes the authority to receive from the Government, either in the District or in the State where letters have been granted, any sum of money which the Government may owe to the testator or intestate at the time of his death. In that case, the court held that, because of this situation, a domiciliary executor having been appointed competent under the statute to act in this jurisdiction, the appointment of an ancillary administrator in the District of Columbia was void ab initio.

In the case of Vaughan v. Northup, 15 Pet. 1, 7, 10 L.Ed. 639, decided by the Supreme Court at the January Term, 1841, Northup was the domiciliary administrator, appointed in Kentucky, and as such received from the United States, at the Treasury Department in Washington, D. C., certain monies due to his intestate for military services rendered during the Revolutionary War. The next of kin brought suit in the District of Columbia, challenging the right of the domiciliary administrator to receive such monies, and praying for relief against him. In affirming the dismissal of the suit, the court said that, under the existing statute of June 24, 1812, a domiciliary administrator could not be sued, and further that he had the right to receive funds in this jurisdiction by virtue of said statute. Indeed, the court went so far as to say, speaking of the statute: "Its obvious design was, therefore, to enable foreign executors and administrators to maintain suits, and to prosecute and recover claims in the district, not against the government alone, but against any persons whatever, resident within the district, who were indebted to the deceased, and to discharge the debtor therefrom, without the grant of any local letters of administration. In effect, it made all debts due from persons within the district, not local assets, for which a personal representative would be liable to account in the courts of the district; but general assets, which he had full authority to receive, and for which he was bound to account in the courts of the state from which he derived his original letters of administration."

It is interesting to note that Mr. Justice Story, speaking for the court in that case, stated a proposition which would in itself have been dispositive of the controversy, and which has since been recognized as the controlling principle respecting payment of monies by the United States to a domiciliary representative wherever he may be appointed: "The debts due from the government of the United States have no locality at the seat of government. The United States, in their sovereign capacity, have no particular place of domicile, but possess, in contemplation of law, an ubiquity throughout the Union; and the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicile. On the contrary, the administrator of a creditor of the government, duly appointed in the state where he was domiciled at his death, has full authority to receive payment, and give a full discharge of the debt due to his intestate, in any place where the government may choose to pay it; whether it be at the seat of government, or at any other place where the public funds are deposited."

Again, in United States, for Use of Mackey et al. v. Coxe, supra, decided by the Supreme Court at the December Term, 1855, was involved the payment of monies by the United States to one Austin J. Raines, an ancillary administrator, appointed in the District of Columbia, for the estate of Samuel Mackey. Upon the payment of such monies, Raines, as attorney in fact for the domiciliary administrator, appointed in the Cherokee Territory, receipted for the moneys from himself as ancillary administrator. It was believed that he and the monies both were subsequently destroyed in a boiler explosion. The court said that, under the provisions of the Act of June 24, 1812, that the monies "might

have been paid, and, indeed, should have been paid, to Raines, the attorney in fact of the administrator of Mackey," [18 How. 103, 15 L.Ed. 299] but that in any event such funds found their way into his hands as attorney in fact, and therefore the bondsmen on his ancillary administration bond were not liable. In this case it is also pointed out that debts due from the Government of the United States have no locality at the seat of Government, and are not to be treated like the debts of a private debtor which constitute local assets in his own domicile, quoting the above passage from Vaughan v. Northup.

In Wyman v. United States ex rel. Halstead, supra, decided by the Supreme Court at the October Term, 1883, after the omission of the Act of June 24, 1812, from the District of Columbia Revised Statutes, adopted in 1874, and before its re-enactment in amended form in 1887, the court held that the payment of monies by the United States to Halstead as ancillary administrator, appointed in the District of Columbia, could not be compelled by mandamus, because, as stated by Mr. Justice Story in Vaughan v. Northrup, and by Mr. Justice McLean in United States, for Use of Mackey v. Coxe, the debts due from the Government of the United States have no locality at the seat of Government, quoting the above passage from Vaughan v. Northup. It was here stated that the Act of June 24, 1812, not then in force, was not referred to in the Northup opinion as the "principal ground of decision." [109 U.S. 654, 3 S.Ct. 419, 27 L.Ed. 1068.]

The plaintiff urges that he is supported in his contention by Darlington et al. v. Turner et al., 202 U.S. 195, 26 S.Ct. 630, 646, 50 L.Ed. 992, decided by the Supreme Court at the October Term, 1905. In that case one S. H. Turner, domiciled in Virginia, turned over to Philip A. Tracy, a resident of the District of Columbia, certain funds for investment. Turner left a will, bequeathing his property to the children of his brother, Thomas M. Turner, of Louisiana. Subsequent to the death of S. H. Turner, Tracy paid over substantially all of the proceeds of such investments to Thomas M. Turner. Upon Tracy's death, the children of Thomas M. Turner brought action against Darlington and Grey, executors of Tracy's estate. The court held that, under the law of Louisiana, Thomas M. Turner, during coverture, was "the administrator of the estate of his minor children," and as such had full power to execute a valid receipt for property of such children turned over to him. There was no showing in that case that there were any creditors in the District of Columbia, and the facts of the case reveal that Tracy, who made payment of the money, was in an unusual position to know that there were none. Quoting from the opinion: "It is said that it [the receipt of the father] was not [valid and binding] because Turner, the testator, was domiciled in Virginia, and if the property had been administered upon in that jurisdiction, never mind what was the power of the father under the law of Louisiana, he would not have been entitled to receive or remove the property from the jurisdiction without an order made by a Virginia court, and upon the giving of satisfactory security. But the property in question was in the District of Columbia, and, *in the absence of all showing that there were creditors in Virginia,* the probate court of the District of Columbia would have had power, under the circumstances disclosed, if administration had been had in the District, to direct the delivery of the property to the person lawfully entitled to represent the minors, without compelling the transmission of the funds to Virginia. Under these circumstances, we are of opinion that the payment in the District of Columbia to the father of the complainants as administrator of their estate, fully empowered to collect and receive the same by the law of their domicil, is controlled by the cases of Wilkins v. Ellett [infra]." (Italics supplied.)

In the first case of Wilkins v. Ellett, 9 Wall. 740, 19 L.Ed. 586, decided by the Supreme Court at the December Term, 1869, it was stated that one Quarles died in the State of Alabama, the place of his domicile, where letters of administration were taken out by one Goodloe of that State. Wilkins, a resident of Tennessee, was indebted to Quarles at the time of his death, and, being called upon in Tennessee by the administrator, paid the debt and took a receipt, for which sum the administrator duly accounted before the probate court in Alabama. Afterwards Ellett, a citizen of Virginia, and claiming to be next of kin to the deceased, took out letters of administration in Tennessee and brought this suit against Wilkins to recover the same debt. *There were no creditors or distributees of the intestate in the State of Tennessee.* The court held that the original administrator, with letters taken out at the place of the domicile, was invested with the title to all

the personal property of the deceased for the purpose of collecting the effects of the estate, paying the debts, and making distribution of the residue according to the law of the place or directions of the will, as the case may be. The court stated: "It is true, if any portion of the estate is situated in another country, he cannot recover possession by suit without taking out letters of administration from the proper tribunal in that country, as the original letters can confer upon him no extra-territorial authority. The difficulty does not lie in any defect of title to the possession, but in a limitation or qualification of the general principles in respect to personal property by the comity of nations, founded upon the policy of the foreign country to protect the interests of its home creditors."

It was, therefore, determined that the debtor could not be compelled to pay again.

In the second case of Wilkins v. Ellett, 108 U.S. 256, 2 S.Ct. 641, 642, 27 L.Ed. 718, decided by the Supreme Court at the October Term, 1882, it developed that there was conflict of evidence upon the question as to whether the domicile of Quarles at the time of his death was in Alabama or in Tennessee. The court there stated:

"There is no doubt that the succession to the personal estate of a deceased person is governed by the law of his domicile at the time of his death; that the proper place for the principal administration of his estate is that domicile; that administration may also be taken out in any place in which he leaves personal property; and that no suit for the recovery of a debt, due to him at the time of his death, can be brought by an administrator as such in any state in which he has not taken out administration.

"But the reason for this last rule is the protection of the rights of citizens of the state in which the suit is brought; and the objection does not rest upon any defect of the administrator's title in the property, but upon his personal incapacity to sue as administrator beyond the jurisdiction which appointed him.

"If a debtor, residing in another state, comes into the state in which the administrator has been appointed, and there pays him, the payment is a valid discharge everywhere. * * *。

"In accordance with these views, it was held by this court, when this case was before it after a former trial, at which the domicile of the intestate appeared to have been in Alabama, that the payment in Tennessee to the Alabama administrator was good as against the administrator afterwards appointed in Tennessee. * * *

"The fact that the domicile of the intestate has now been found by the jury to be in Tennessee does not appear to us to make any difference. *There are neither creditors nor next of kin in Tennessee.* The Alabama administrator has inventoried and accounted for the amount of this debt in Alabama. The distribution among the next of kin, whether made in Alabama or in Tennessee, must be according to the law of the domicile; and it has not been suggested that there is any difference between the laws of the two states in that regard." (Italics supplied.)

█ It seems apparent the decisions holding that a foreign executor or administrator can collect assets in the District of Columbia as a matter of right are founded upon the provisions of the Act of June 24, 1812, and it seems equally clear that the proviso to that statute when it was re-enacted was aimed directly at the earlier decisions which gave to a foreign domiciliary executor or administrator the right to sue for, or recover without suit, assets of his decedent in the District of Columbia without regard to the rights of local creditors. No decision of the character of Kane v. Paul has been rendered since the enactment of the proviso. That local creditors in the District of Columbia, as local creditors in substantially, if not all, other jurisdictions in the United States, are to be given an opportunity to assert their claims against local assets of a decedent domiciled elsewhere seems clearly to have been the intention of Congress as reflected in the more recent provisions governing foreign domiciliary representatives. Certainly this intention seems to find expression in Section 18—501, supra, enacted in 1901, and the further proviso contained in Section 20—505, supra, which was adopted at that time. Our own Court of Appeals, in the case of Duehay v. Acacia Mutual Life Insurance Company, 70 App.D.C. 245, 105 F.2d 768, 772, 124 A.L.R. 1268, decided in 1939, speaking through Mr. Justice Miller, with reference to the statute in question, says: "Manifestly, the very purpose and function of the proviso was to protect local creditors, if there were any, by requiring the administrator to retain the assets within the jurisdiction and to administer them according to local law. Otherwise, the opportunity of those creditors

to enforce their claims against local assets would be destroyed."

Unquestionably, there are circumstances in which a debtor who has paid his debt to the foreign domiciliary executor or administrator will not be required again to pay that debt. Wilkins v. Ellett, supra, discloses one situation of this kind. There, it will be noted, no local creditor was prejudiced. Indeed, in the instant case, as it has now developed, there being no local creditors, none would have been prejudiced. Under the equitable doctrine against unjust enrichment, courts have been, and should be loath, to require double payment, and they have not so required where no one has been prejudiced by the original payment.[2]

■■ To say, however, that under some circumstances the voluntary payment by a local debtor of local assets to a foreign domiciliary executor or administrator will afford a valid acquittance of the debt is very different from saying that the debtor who does not voluntarily pay such assets to such foreign representative should be liable in damages, and that is the only question here. In at least one jurisdiction, where payment to a foreign domiciliary representative is settled by statutory provision to be a good acquittance, it has been held that the debtor is not thereby required to make payment to such domiciliary representative. Joy's Executor v. Swanton Savings Bank & Trust Co., 1940, 111 Vt. 106, 10 A.2d 216, 218. In that case, the court said: "It cannot be reasonably assumed that the Legislature intended to impose an absolute duty to pay over and thus afford a speedy opportunity to remove from the jurisdiction assets which should be applied to the payment of claims of resident creditors."

If the right to sue is qualified by a provision that gives to an interested party the right to require a bond for the protection of local creditors, it is difficult to see how there can be a *right to demand* such payment, without suit, in the absence of comparable protection to local creditors. By pursuing either the course of applying for ancillary administration or instituting a suit, in which a bond for the benefit of local creditors may be required, the foreign domiciliary representative has open to him all reasonable means to collect assets of the estate without depriving local creditors of the rights which it is clear the Congress intended them to enjoy. It is not to be questioned that, where voluntary payments can be made without hazard to the rights of others, it is in the public interest that they be encouraged as avoiding unnecessary expense and litigation. But to penalize a local debtor, who does not make a voluntary payment of local assets to a foreign domiciliary representative without requiring some protection against claims of local creditors, or waiting a reasonable time to give such creditors, if any, an opportunity to assert their rights, would tend to render nugatory the public policy reflected in the statutory provisions now in force. Quite obviously, all local assets could in such cases be removed from the jurisdiction before local creditors had knowledge of the death of the decedent, or opportunity to assert their rights. Furthermore, a debtor ought not to be subjected to the hazard of double payment, or even the burden of litigation to resist it, and it cannot be said that one unreasonably withholds property of another when he does so only to protect himself from that eventuality. The fact that there are no local creditors could not, in ordinary cases, be known until a reasonable time had elapsed for them, if any, to assert their rights. I think it is clear that in all but exceptional cases, of which this does not appear to be one, the period of one year fixed by Section 18—501, supra, is the period one may reasonably await the assertion of claims of local creditors, unless otherwise protected against such claims.

I think it is significant that not one case has been called to my attention by counsel, or discovered by me in my research, in this jurisdiction, or any other, in which damages such as here claimed have been either sought or allowed.

■ My conclusion is that the defendant did not unreasonably withhold the payment of the assets of the decedent to the plaintiff, and, therefore, interest, not a part of the contractual obligation, but as damages, cannot be recovered by the plaintiff in this action.

The motion for summary judgment will be denied.

---

[2] Voluntary Payment to a Foreign Administrator, by Joseph H. Beale, XLII Harvard Law Review 597; Voluntary Payment to Foreign Administrator, by Victor S. Mersch, XVIII, No. 2, Georgetown Law Journal 130; Mersch, Probate Court Practice in the District of Columbia 28.