874 F.2d 510
 57 USLW 2707
 Henry F. DeMENT, Jr., on behalf of himself and as custodian
to Rachel, Jacqueline and Genevieve DeMent, Appellee,
v.
OGLALA SIOUX TRIBAL COURT; Patrick Lee, Judge,
Debra Redner, Appellant.
Henry F. DeMENT, Jr., on behalf of himself and as custodian
to Rachel, Jacqueline and Genevieve DeMent, Appellee,
v.
OGLALA SIOUX TRIBAL COURT; Patrick Lee, Judge; Appellants,
Debra Redner.
 Nos. 88-5105, 88-5106.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 18, 1988.
Decided May 3, 1989.
 
 Mario Gonzalez, Pine Ridge, S.D., for appellant.
 Before HEANEY* and BEAM, Circuit Judges, and LARSON,** District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Debra Redner and the Oglala Sioux Tribal Court appeal the district court order finding that the tribal court lacked jurisdiction to adjudicate a custody battle between Redner and her former husband, Henry DeMent.[1] We affirm in part and reverse in part.
 
 BACKGROUND
 
 2
 Henry DeMent and Debra Redner have three minor children: Rachel, Jacqueline and Genevieve. When DeMent, a non-Indian, and Redner, a member of the Oglala Sioux Indian Tribe, were divorced in March 1981 in Nebraska, a state court granted joint custody to both parents and physical custody to Redner.
 
 
 3
 In October 1981, Redner and DeMent reconciled and Redner moved with the children to be with DeMent in California. They lived together until August 1983 when the couple separated. The children continued to live with their father until June 1984 when Redner took them with her to live on the Pine Ridge Indian Reservation in South Dakota. Since that time, both parents have battled one another for physical custody of the girls.
 
 
 4
 On August 29, 1984, Redner obtained a temporary restraining order from the Oglala Sioux Tribal Court after DeMent threatened to take the girls back to California. DeMent was served with notice of the TRO when he traveled to the Indian reservation to visit the children. Although the tribal court set a hearing for September 4, 1984 to resolve the custody issue, DeMent kidnapped the children and took them to California before the hearing was held. DeMent was arrested in California and the children returned to their mother in South Dakota.
 
 
 5
 On October 10, 1984, DeMent asked Redner to drop the criminal charges against him, which she agreed to do after DeMent promised never to steal the children again. The following day, DeMent filed an action in San Diego County Superior Court seeking a modification of the Nebraska court order awarding custody to Redner. On November 21, 1984, Redner filed a motion to dismiss this action and a notice of special appearance alleging that the California court had no jurisdiction over her and her children. On December 13, 1984, the court denied this motion, stating "Respondent's Motion to Dismiss on the basis of lack of Jurisdiction under [Uniform Child Custody Jurisdiction Act and] Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.) and inconvenient forum is denied." No further reasons were given for the exercise of jurisdiction, even though at the time DeMent instituted the state proceedings, the children were living with their mother on the reservation.
 
 
 6
 In the meantime, Redner sought an order from the tribal court confirming the Nebraska custody determination and making the children wards of the tribal court. This motion was granted on November 23, 1984.
 
 
 7
 On January 17, 1985, the California state court held a custody hearing. Redner was not present at this proceeding, nor did she have legal representation. On January 31, 1985, the court awarded DeMent custody based on Redner's failure to file any opposition. When Redner sought reconsideration of the California decree, the court refused and awarded custody to DeMent on March 11, 1985.
 
 
 8
 The next day, DeMent traveled to South Dakota to take the children back to California. Redner obtained another restraining order from the tribal court and prevented DeMent from removing the children.
 
 
 9
 On May 16, 1985, the tribal court held a custody hearing. Although DeMent was present, he apparently objected to the tribal court's jurisdiction. On May 21, 1985, the tribal court ruled that it had jurisdiction to adjudicate the custody suit based on the domicile of the children on the reservation. It found that the California proceedings were invalid and refused to give full faith and credit to the California court order. It awarded custody to Redner. Shortly thereafter, DeMent kidnapped the children for a second time and took them to California.
 
 
 10
 Over the next year, the children lived with their father in California. Redner traveled to California and unsuccessfully sought a modification of the California court order. After several hearings and a court-ordered home study, the court refused to modify its earlier decree. On April 25, 1986, DeMent was awarded custody.
 
 
 11
 In the summer of 1986, DeMent allowed the girls to travel to Pine Ridge Indian Reservation to visit their mother. To ensure their safe return to California, he asked Redner to obtain an order from the tribal court that the California custody decree would be honored. On July 15, 1986, the tribal court entered a stipulation recognizing Redner's summer visitation rights. At the end of the summer, the children went back to California.
 
 
 12
 The parents agreed to the same arrangement for the summer of 1987. At the end of the summer, however, Redner refused to return the girls to California. On August 21, 1987, she obtained a restraining order from the tribal court preventing DeMent from taking the children. DeMent informed the San Diego authorities and a warrant was issued in California for Redner's arrest. The tribal court held a second custody hearing on October 8, 1987 but DeMent refused to attend, alleging that the tribal court lacked jurisdiction over him. The tribal court awarded custody to Redner on October 12, 1987.
 
 
 13
 DeMent then brought this action in district court in South Dakota seeking a writ of habeas corpus to regain custody of the children. He alleged that the tribal court had violated his right to due process under the Indian Civil Rights Act (ICRA), 25 U.S.C. Sec. 1302(8) and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. Sec. 1738A, by refusing to enforce the California custody decree. The tribal court alleged that it has exclusive subject matter jurisdiction under the Indian Child Welfare Act (ICWA), 25 U.S.C. Sec. 1911(d), over Indian child custody proceedings and that the California court lacked jurisdiction over the children while they resided on the reservation.
 
 
 14
 The district court held that DeMent had no right to relief under either the PKPA or the ICRA. It also found the ICWA inapplicable to child custody proceedings between divorced parents and thus, inapplicable to the present suit. Finally, it held that the tribal court had no personal jurisdiction over DeMent and, thus, had no authority to adjudicate the custody dispute involving his children. The tribal court appeals to this Court arguing that the district court erred in holding that the tribal court had no jurisdiction to adjudicate the custody dispute between DeMent and Redner.
 
 DISCUSSION
 I. JURISDICTION
 
 15
 The district court dismissed DeMent's petition for habeas corpus relief after determining that neither the ICRA or the PKPA create a private right of action against either the tribal court or Redner.[2] We disagree. While we agree with the lower court that the PKPA does not give DeMent a cause of action, the ICRA does create a cause of action as well as federal habeas jurisdiction under appropriate circumstances.
 
 
 16
 Section 1303 of the ICRA provides: "The privilege of the writ of habeas corpus shall be available to any person in a court of the United States to test the legality of his detention by order of an Indian tribe." 25 U.S.C. Sec. 1303 (1983). See also Santa Clara Pueblo v. Martinez, 436 U.S. 49, 66-67, 98 S.Ct. 1670, 1681, 56 L.Ed.2d 106 (1978).
 
 
 17
 DeMent's complaint alleged that by refusing to enforce the California decree in 1987, the tribal court violated his right to due process protected by the Indian Civil Rights Act, 25 U.S.C. Sec. 1302(8). Section 1302(8) provides in part:
 
 
 18
 No Indian tribe in exercising powers of self-government shall--
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law * * *.
 
 
 22
 We believe the district court had jurisdiction to determine whether DeMent stated a claim under this statutory provision.
 
 
 23
 Furthermore, we cannot overlook the fact that the basic dispute in this case is whether California or the tribe had jurisdiction to determine the custody of DeMent's children. The question of whether an Indian tribe has the power to compel a non-Indian to submit to the civil jurisdiction of a tribal court is a federal question under 28 U.S.C. Sec. 1331. National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845, 852, 105 S.Ct. 2447, 2451-52, 85 L.Ed.2d 818 (1985). Thus, the district court had federal question jurisdiction in this case.
 
 II. PARENTAL KIDNAPPING PREVENTION ACT
 
 24
 As stated above, we agree with the district court that DeMent has no direct federal cause of action under 28 U.S.C. Sec. 1738A. In Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), the Supreme Court of the United States held that this statute does not furnish an implied cause of action in federal court to determine which of two conflicting state custody decisions is valid.[3] Although the PKPA was intended to eliminate custody struggles such as we have here, the Supreme Court in Thompson held that federal courts are not the appropriate forum to raise a PKPA claim.[4]
 
 III. INDIAN CHILD WELFARE ACT
 
 25
 We agree with the district court that the Indian Child Welfare Act does not apply to this case. Although the ICWA gives Indian tribes exclusive jurisdiction to determine the custody of Indian children, the statute only applies to proceedings to determine foster care placement, the termination of parental rights, preadoptive placement and adoptive placement. Exclusive jurisdiction was not given in proceedings to determine the custody of children in a divorce proceeding. 25 U.S.C. Sec. 1903.
 
 IV. INDIAN CIVIL RIGHTS ACT
 
 26
 DeMent asserted that the tribal court's failure to enforce the California decree, as required by the PKPA, violated his and his children's due process rights, thereby violating the Indian Civil Rights Act, 25 U.S.C. Sec. 1302(8).
 
 
 27
 We disagree with the district court's finding that section 1302(8) does not give DeMent a federal cause of action. The ICRA requires tribal courts to exercise their jurisdiction in a manner consistent with due process and equal protection. See National Farmers Union Ins. v. Crow Tribe, 736 F.2d 1320, 1322-23 (9th Cir.1984), rev'd on other grounds, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) (insurance company alleged that tribal court's exercise of jurisdiction over its insured deprived it of due process and equal protection). Thus, if a tribal court acts outside the scope of its jurisdiction, that action may constitute a due process violation.
 
 
 28
 DeMent alleged that the tribal court violated his due process rights by failing to enforce what he believes to be a valid state custody decree and by awarding custody of the children to Redner without having personal jurisdiction over him. The Supreme Court has held that, in an action for child support, exercising in personam jurisdiction over a nonresident nondomiciliary parent of a minor child domiciled within a state may violate the due process under the federal Constitution. Kulko v. California Superior Court, 436 U.S. 84, 101, 98 S.Ct. 1690, 1701, 56 L.Ed.2d 132 (1978) (the Supreme Court refused to enforce a California child support decree because the father's contacts with the state were too attenuated to satisfy traditional notions of fair play and substantial justice). But see May v. Anderson, 345 U.S. 528, 534 n. 8, 73 S.Ct. 840, 844 n. 8, 97 L.Ed. 1221 (1953) (personal jurisdiction over both parents may not be necessary if children have been unlawfully or surreptitiously taken by one parent from another). Similarly, we believe that a tribal court exercising in personam jurisdiction over a nonmember nonresident parent of a minor child domiciled within the Indian reservation may violate due process under section 1302(8) of the ICRA. We believe that DeMent may have a valid due process claim under the ICRA.
 
 
 29
 There are, however, several procedural problems with the application of the ICRA in this case. In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the Supreme Court held that federal court enforcement of the ICRA is limited to habeas corpus jurisdiction on behalf of persons in tribal custody. Id. at 66-67, 98 S.Ct. at 1681. Furthermore, the ICRA cannot be directly enforced against Indian tribes because they are shielded from suit by sovereign immunity. The Act, however, may be enforced against officers of the tribe. Santa Clara Pueblo, at 59, 98 S.Ct. at 1677. Finally, the Court clearly indicated that the ICRA is primarily enforceable in tribal forums. Id. at 65, 98 S.Ct. at 1680. See Felix S. Cohen's Handbook on Federal Indian Law 768-69 (1982 ed.). Thus, persons alleging violations of the ICRA have been required to exhaust tribal remedies before requesting habeas relief from federal courts. Consequently, we are faced with the two issues: first, whether habeas relief is available in this case; and second, if so, whether a non-Indian plaintiff who disputes the tribal court's jurisdiction over him must exhaust tribal remedies before seeking federal habeas relief under section 1303 of the ICRA.
 
 A. Habeas Corpus
 
 30
 The habeas corpus provision of the ICRA authorizes any person "detained" by order of an Indian tribe to test the validity of that detention in federal court by way of a writ of habeas corpus. Federal habeas corpus, however, has generally not been available to challenge a state decree on parental rights or child custody. See e.g., Lehman v. Lycoming County Children's Services Agency, 458 U.S. 502, 511, 102 S.Ct. 3231, 3237, 73 L.Ed.2d 928 (1982) (mother could not challenge a state court judgment terminating her parental rights through the federal habeas corpus statute, 28 U.S.C. Sec. 2254). We believe, however, that, under the facts of this case, the father should be allowed to seek federal habeas relief. First, in Lehman, the parent seeking federal habeas relief merely sought to collaterally attack the state court's custody decision. In the present case, DeMent does not directly attack the tribal court's decision to award Redner custody. Rather, he alleges that the tribal court illegally took "custody" of the children on the reservation by making them wards of the tribal court and by refusing to enforce the California custody decree. This case no longer represents a child custody battle; it has become a dispute over whether a tribal court violates a non-Indian's due process rights by refusing to give full faith and credit to a state custody decree. Thus, the legal issue involved in this case is distinguishable from that sought to be resolved in the Lehman case.
 
 
 31
 Second, we believe that DeMent's children are being detained by the tribe by an order of the tribal court. The tribal court made the girls wards of the court on November 23, 1984 and has refused to enforce the California custody decree. Furthermore, on June 17, 1985, the Oglala Sioux Tribal Council passed Resolution 85-109 declaring that the Tribe has sole jurisdiction over the DeMent children. If DeMent is correct and the California decree is valid, a federal court order may be the only way to compel the tribe to return the children to their father.[5] Thus, we believe that habeas corpus relief is available under section 1303 to determine the validity of the California decree and the appropriateness of the tribal court's exercise of jurisdiction. Accord United States ex rel. Cobell v. Cobell, 503 F.2d 790, 795 (9th Cir.1974), cert. denied, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975) (section 1303 habeas relief available to father seeking release of Indian children from tribe); cf. Weatherwax on Behalf of Carlson v. Fairbanks, 619 F.Supp. 294, 296 (D.Mont.1985) (habeas relief unavailable to challenge propriety of Indian tribal court custody determination); Wells v. Philbrick, 486 F.Supp. 807, 809 (D.S.D.1980) (Indian father could not challenge validity of tribal council's custody determination in federal habeas proceeding when children were admittedly not in custody of tribe).
 
 B. Exhaustion of Tribal Remedies
 
 32
 The district court found that the tribal court lacked jurisdiction in this case because the tribe's code only allows jurisdiction over non-members if they consent to jurisdiction. We reverse this finding because DeMent failed to exhaust the jurisdictional dispute in tribal court.[6]
 
 
 33
 In National Farmers Union Ins. Co., supra, the Supreme Court held that a federal court should not entertain a challenge to the jurisdiction of a tribal court until after a petitioner has exhausted its remedies in the tribal court. 471 U.S. at 856, 105 S.Ct. at 2454. The Supreme Court wrote:
 
 
 34
 [T]he existence of and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignity, the extent to which the sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.
 
 
 35
 We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge.
 
 
 36
 471 U.S. at 855-56, 105 S.Ct. at 2453-54 (footnotes omitted).
 
 
 37
 In Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), the Supreme Court reiterated the need for non-Indians to exhaust tribal remedies in civil cases before seeking review in federal court. It stated:
 
 
 38
 Regardless of the basis for jurisdiction, the federal policy supporting the tribal self-government directs a federal court to stay its hand in order to give the tribal court a "full opportuity to determine its own jurisdiction." * * * At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.
 
 
 39
 480 U.S. at 16, 107 S.Ct. at 977 (citations omitted).
 
 
 40
 We recognize that exhaustion is not required if an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, if the action is patently violative of express jurisdictional prohibitions, or if exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction. National Farmers Union Ins. Co., 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21.
 
 
 41
 Before the district court, DeMent argued that the tribal court violated an express jurisdictional prohibition since the tribal court's jurisdiction extends only to members and to nonmembers who consent to its jurisdiction, see Oglala Sioux Tribal Constitution, Article V, and all civil suits between members and nonmembers must be brought to the court by stipulation. Revised Code of the Oglala Sioux Tribe of the Pine Ridge Reservation, Ch. 2, Section 20.
 
 
 42
 The record indicates, however, that DeMent entered the reservation on three separate occasions with an intent to remove the children without Redner's approval and, possibly, in violation of the Nebraska custody decree and a valid tribal restraining order. Also in the record is a tribal court opinion indicating that DeMent participated in a custody hearing on the reservation on May 16, 1985. Furthermore, the tribal court argues that section 48 of the tribal code which gives a tribal court jurisdiction over child custody disputes in divorce proceedings expands its jurisdictional authority. We believe that under the factual circumstances of this case, the assertion of jurisdiction did not constitute a patent violation of express jurisdictional limitations. DeMent should have appealed the tribal court's decision as to jurisdiction to the court of appeals as provided by the Revised Code of the Oglala Sioux Tribe of the Pine Ridge Reservation, Ch. 2, Section 6.3, before seeking habeas relief in federal court.[7]
 
 CONCLUSION
 
 43
 We remand the case to the district court. Given the long and tortured history of this obviously bitter dispute, we strongly urge the district court to consider staying the matter pending timely tribal court proceedings, with jurisdiction retained. See National Farmers Union, 471 U.S. at 8571, 105 S.Ct. at 2454, and LaPlante, 480 U.S. at 20 n.14, 107 S.Ct. at 979 n.14. We believe this would permit a speedy adjudication should the procedures followed or the results attained in the tribal court require further action by the district court.ERR0 #3 2060
 
 
 
 *
 The Honorable Gerald W. Heaney assumed senior status on December 31, 1988
 
 
 **
 The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Henry DeMent failed to file a brief with this Court and was barred from participating in the oral argument pursuant to Fed.R.App.P. 31(c)
 
 
 [2]
 The district court did not state whether its decision to dismiss the petition was based on a lack of subject matter jurisdiction or on a failure to state a claim for which relief could be granted by a federal court
 
 
 [3]
 The PKPA imposes a duty on states to enforce a valid child custody determination entered by a sister state. Once a state exercises jurisdiction over a custody dispute, no other state may exercise concurrent jurisdiction and all states must accord full faith and credit to a sister state's custody decree. Id., 484 U.S. at ----, 108 S.Ct. at 514-16, 98 L.Ed.2d at 518-19. A state court may modify a custody decree made by a sister state only if it has jurisdiction and the court of the sister state no longer has jurisdiction or has declined to exercise jurisdiction. 28 U.S.C. Sec. 1738A(f). The purpose of the act was to remedy the inapplicability of full faith and credit requirements to custody determinations and to deter parents from kidnapping their children to relitigate custody in another state. Id. at ----, 108 S.Ct. at 517-18, at 521-22. The Supreme Court held that the PKPA did not create a cause of action in federal court; it merely extended the Full Faith and Credit Clause of the Constitution to state custody determinations. Id. at ----, 108 S.Ct. at 520-21, at 525. If in the course of state proceedings, a "truly intractable jurisdictional deadlock" occurs, ultimate review of state jurisdiction under PKPA is available in the Supreme Court. Id
 
 
 [4]
 The appropriate forum for raising the full faith and credit effects of a previous state custody decree is in the subsequent custody proceeding. Thompson, 484 U.S. at ----, 108 S.Ct. at 520-21, 98 L.Ed.2d at 525. Thus, DeMent could have and should have raised his PKPA claim in tribal court and appealed any adverse decision to the tribe's appellate court
 We recognize that the Oglala Sioux Tribe alleges that the PKPA does not apply to Indian tribes as the statute on its face refers only to states or territories. The Supreme Court has construed the term "territories" in an earlier statute to include Indian tribes, United States ex rel. Mackey v. Coxe, 59 U.S. (18 How.) 100, 103, 15 L.Ed. 299 (1856), and this Court has also reached that conclusion. Cornells v. Shannon, 63 F. 305, 306 (8th Cir.1894); Standley v. Roberts, 59 F. 836, 845 (8th Cir.1894); Mehlin v. Ice, 56 F. 12, 19 (8th Cir.1893). On the other hand, an analysis of the legislative history may show that Congress did not intend for the PKPA to apply to Indian tribes. See W. Vetter, Of Tribal Courts and "Territories" Is Full Faith and Credit Required?, 23 Cal.W.L.Rev. 219, 255-57 (1987). Whether the term "territories" in the PKPA applies to Indian tribes is a question of federal law, but a federal court cannot resolve that issue unless and until DeMent raises the PKPA claim in tribal court.
 
 
 [5]
 We do not express any opinions as to the validity of the California decree as the issue is not properly before us
 
 
 [6]
 The tribal court also urges this Court to determine the scope of its jurisdiction in accordance with principles set out in White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) and Wisconsin Potowatomies v. Houston, 393 F.Supp. 719 (W.D.Mich.1973). Because we find that the district court should have stayed its hand until DeMent exhausted tribal remedies, we need not reach the jurisdictional issue at this time
 
 
 [7]
 We note that section 6.3(1) of the tribal code requires an appealing party to file notice of appeal within fifteen days of the judgment. This time limitation may be extended for a period "not to exceed 60 days from the expiration of the time otherwise prescribed" by a showing of excusable neglect. In his federal complaint, DeMent objected to the action taken by the tribal court in its October 12, 1987 order. By ignoring that order and proceeding directly to federal court, DeMent may have lost his right to appeal to the tribal appellate court
 Section 48 of the tribal code provides, however, that a tribal court may vacate or modify a child custody order at any time. Thus, we believe that in order for DeMent to exhaust his tribal remedies, he must petition the tribal court for a vacation or modification of its earlier order. In this petition, he may raise his due process claim under the ICRA and his full faith and credit claim under the PKPA. If the court affirms its earlier order, DeMent must seek judicial review in the tribal court of appeals. Only after exhausting these tribal remedies may DeMent return to federal district court and seek a writ of habeas corpus. At that time, the district court can properly determine whether the PKPA applies to Indian tribes and whether the tribal court violated DeMent's due process rights by refusing to give full faith and credit to the California custody decree. Inherent in this analysis will be a determination of the validity of the California decree and the appropriateness of tribal jurisdiction over a nonmember, nonresident parent who kidnapped his children from an Indian reservation.